1831.

Mitchell
v.
Bunch.

---

## MITCHELL vs. BUNCH.

Whether the court of chancery has power to direct the application of real property, situated without the jurisdiction of the court, in payment of a judgment recovered in one of the courts of this state ? Quære.

The court, however, has jurisdiction to compel a debtor, who has been discharged from imprisonment for debt, to discover his property, in order that it may be applied in satisfaction of his debts.

But, in England, where the creditor can, by an incarceration of the debtor, compel him to apply his property in payment of his debts, the court of chancery will not interfere.

If the person of the defendant is within its jurisdiction, the court has jurisdiction as to his property situated without such jurisdiction.

And that jurisdiction is exercised by compelling the defendant, either to bring the property in dispute within the jurisdiction of the court, or to execute such a conveyance or assignment thereof, as will be sufficient to vest in the grantee or assignee the legal title, as well as the possession of the property, according to the laws of the place where the same is situated.

The court of chancery has jurisdiction to enforce the performance of contracts made in a foreign country ; not only where the party proceeded against is domiciled here, but also where he is a foreigner, if he be within the jurisdiction of the court at the time of the service of process upon him.

A writ of ne exeat, although originally a prerogative writ, is now resorted to merely for the purpose of obtaining equitable bail.

Whenever the defendant intends leaving the state, the complainant, upon producing evidence of such intention, and of his equitable claims against the defendant, has a right to this equitable bail.

It is a matter of course to discharge a ne exeat, upon the party's giving security to answer the complainant's bill, where a discovery is necessary, and to abide such order and decree as may be made in the cause, and to render himself amenable to the process of the court which may be issued to enforce its performance.

As a general rule, a ne exeat is allowed only upon an equitable demand.

But in case of a bill filed for an account, it may be granted, although the defendant might have been arrested at law, this being a case where the courts of chancery and law have a concurrent jurisdiction.

A ne exeat may be granted in a suit between foreigners, and in respect to demands arising abroad.

The mere pendency of a suit in a foreign court, or in a court of the United States, cannot be pleaded in abatement, or in bar to a suit for the same cause, in a state court.

But where a judgment debtor has been sued upon the judgment, in the circuit court of the United States, sitting within the state, and held to bail in such suit, and a bill has also been filed against him in the court of chancery, to obtain payment of the same judgment, and a ne exeat issued thereon against him, the ne exeat will be discharged, unless the complainant elects to release the defendant from his arrest and bail in the circuit court of the United States.

1831.

Mitchell
v.
Bunch.

THIS was an application to discharge a ne exeat. The complainant is a resident at the Havanna; and the defendant resides at Carthagena, and is a citizen of the Colombian government. In April, 1821, the defendant being in New-York, obtained his discharge under the act for the relief of debtors, with respect to the imprisonment of their persons. He was afterwards sued in the supreme court, by the present complainant, and plead that discharge in bar of execution against his person. In January, 1822, judgment was rendered against the defendant in that suit for $42,381; exempting, however his body from imprisonment thereon, according to the provisions of the statute. The complainant caused an execution to be issued on his judgment, and the same was returned by the sheriff unsatisfied, for want of any visible property of the defendant whereon to levy. In August, 1831, the bill in this cause was filed alleging, among other things, that for several years past the defendant had been engaged in mercantile business at Carthagena, and had sufficient property, either there or elsewhere, to satisfy the whole amount of the complainant's judgment; that a war existed between Spain and Colombia, so that the complainant, who was domiciled within a Spanish territory, could not prosecute in the courts of Colombia, to recover the amount of his judgment; that the defendant was able, by means of bills drawn on his house in Carthagena or otherwise, to raise the money and pay the complainant, but that he refused to do so; and that the defendant was temporarily within this state, but was about to leave the same for Carthagena. The bill, therefore, prayed a discovery, and for satisfaction of the judgment, out of the property, choses in action, and equitable interests of the defendant, and for general relief. The complainant, by his bill, also prayed for a writ of ne exeat republica, to restrain the

October 4th.

1831.

Mitchell
v.
Bunch.

defendant from leaving the state until such discovery and re-lief could be obtained. A ne exeat was accordingly allowed by the injunction master, and was marked for bail in the sum of $80,000. An affidavit of the defendant was read on this application, showing that the complainant had also caused him to be arrested in the circuit court of the United States, and to be holden to bail there, in an action of debt on the same judgment; and which suit was still pending.

*D. B. Ogden*, for the defendant. The parties to this suit are foreigners, and the debt, for the recovery of which the bill in this cause was filed, was contracted in a foreign country. And the defendant has no property within the jurisdiction of the court. The bill prays that the defendant be required to bring his property within the jurisdiction of the court, and that the same be applied to the satisfaction of the complainant's debt. A ne exeat is a harsh proceeding; it is a dreadful weapon; and may be oppressively used to gratify malice. Lord Chancellor Eldon said: "It was a most powerful instrument, and he never applied it without apprehension." It can never be necessary except in extraordinary cases. (*Hannah* v. *McIntire*, 11 Ves. 55. *Dick* v. *Swinton*, 1 Ves. & B. 372.) Originally, in England, this was a prerogative writ, and was only issued to prevent citizens from leaving the kingdom. It never was supposed to apply to foreigners who were temporarily within the kingdom. (*Whitehead* v. *Murat*, Bunb. Exch. R. 183.) In one case, where the debt was contracted in England, the defendant was held to bail until his answer was put in, upon the ground of contempt. In *De Carriere* v. *De Calone*, (4 Ves. 590,) it was held, that an application for ne exeat was to the discretion of the court; that it was a matter of great delicacy to use it against a foreigner; and that it was granted only in case of a mere equitable demand, and never upon a mere legal demand, upon which the debtor might be held to bail at law. (*Robertson* v. *Wilkie*, Ambler's R. 177. *Pearne* v. *Lisle*, id. 76. Anonymous, 2 Atk. 210. *Jones* v. *Sampson*, 8 Ves. 573.) In *Porter* v. *Spencer*, (2 John. Ch. R. 269, a ne exeat was granted to prevent a failure of

justice, as both the defendants and his bail were about to leave the state. In *Woodward* v. *Schatzell et al.* (3 John. Ch. R, 412,) the complainant was a citizen, and the debt a partnership debt ; but the ne exeat applied for was refused by Chancellor Kent. A foreigner cannot come here and claim the benefit of an extraordinary remedy, which is in some cases afforded to our own citizens. This is not a new principle. A non-resident creditor had no right to an attachment, under the old act for relief against absconding or concealed debtors. (In the matter of Fitzgerald, 2 Caine's R. 318.) And by the revised statutes non-resident creditors can only sue out an attachment in cases where the debt was contracted within the state. (2 R. S. 3.) In 3 Caines' R. 318, it was held that foreigners were not entitled to an attachment under the act in relation to absconding or concealed debtors. By our statutes a difference was intended to be made between foreigners and citizens. The acts of congress do not give the United States courts jurisdiction of suits between two foreigners. In this case both parties are foreigners. A ca. sa. is the highest remedy known to the law. In this court it must be considered as a process to compel the debtor to produce his property, in satisfaction of his debt. This perhaps may be done in chancery, where the defendant cannot be held to bail at law, and his property is within the jurisdiction of the court. The statute authorising creditor's bills, was never intended to reach property out of the jurisdiction of the court. No process of the court could take such property. No officer could sell it. Where the debtor fraudulently sends his property out of the jurisdiction of the court, the court might compel an assignment of it, by attachment or otherwise. Here there is no allegation in the bill that the property ever was within the jurisdiction of the court. The defendant being a foreigner, the decree can have no effect upon his property out of the jurisdiction of the court. An assignment made under an insolvent or bankrupt law in the United States, would not be sustained by the courts in a foreign country against subsequent assignees. (2 Kent's Com. 420. *Ingraham* v. *Geyer,* 13 Mass. R. 146, per Ch. J. Parker.) This principle has also been recognized and established by the supreme court of the

1831.

Mitchell
v
Bunch.

United States. The cases which arise under the bankrupt laws of England have no application to this case. A commission of bankruptcy is only taken out in England where the bankruptcy was committed there. Assignments under our insolvent laws are not binding in foreign countries, upon the ground that they are not voluntary assignments. The courts of Columbia would not allow the complainant to do indirectly what they will not permit to be done directly. The judgment recovered for this demand, being in a court of competent jurisdiction, is a bar to this suit. The complainant, by taking his judgment against property only, can only claim, in our courts, the future acquisitions of the defendant in the state. And in enforcing the remedies the contract, notwithstanding the judgment recovered upon it, must be construed according to the laws of Havanna. And here the complainant is proceeding in two courts against the defendant for the same demand. The court will compel him to elect to proceed either at law or in equity. Courts in one state do not hold to bail for a debt, until a suit commenced for the same demand in another state, in which the party has been also held to bail, has been discontinued.

*B. F. Butler*, for the complainant. If this ne exeat is not sustained the complainant will be remediless. The remarks of Lord Eldon have been referred to, to show his opinion of this writ. I refer to the case of *Howden* v. *Rogers*, (1 Ves. & B. 132 ;) also to show his views in relation to it. In that case he said that " because this was an extraordinary writ, he never allowed it without reading the affidavit upon which it was applied for." This writ is no longer considered as extrordinary ; it has come to be regarded as a part of the ordinary process of the court of chancery, adopted to enforce equitable bail and advance justice. It is nothing more than an equitable capias. The rules regulate the proceedings upon it. *Gilbert* v. *Coit*, 1 Hopk. R. 499.)

The bill in this case is a creditor's bill, filed under the revised statutes, which were passed in affirmance of the doctrine laid down in the case of *Hadden* v. *Spader*, 20 John. R. 554, and other cases. It is not necessary, in these cases,

that the defendant should have property within the jurisdiction of the court, in order to give the court jurisdiction. But the bill states that the defendant has, for several years past, remitted property to this country. It does not allege that he owns any property situated without the state, and it is so framed as to compel the discovery of all his property, wherever situated; and the court is authorized to prevent its assignment, and to decree the satisfaction of the complainant's debt out of it, whether it be situated out of the state or not, and whether it was originally liable upon execution at law or not. If the debtor is within its jurisdiction, the court can compel him to apply his property, which is without such jurisdiction, in satisfaction of his debts. Personal property follows the person. An assignment, under the insolvent and bankrupt laws, transfers the right to it, wherever it may be. The court can even compel the debtor to convey his title to lands situated out of the jurisdiction of the court, if the creditor is willing to take them in payment of his debt. In a great variety of cases, the court of chancery, where the party is before the court, has exercised jurisdiction over real estate, situated without the jurisdiction of the court. (*Arglasse* v. *Muschamp*, 1 Vern. R. 75. *Earl of Kildare* v. *Eustace & others*, 1 Eq. Cas. Ab. 134, pl. 4. *Nabob of Arcott* v. *East India Co.*, 1 Ves. jun. 385. *Penn* v. *Lord Baltimore*, 1 Ves. sen. 445. *Lord Cranston* v. *Johnston*, 3 Ves. jun. 170. *Massie* v. *Watts*, 6 Cranch, 158, per Ch. J. Marshall. *Dunn & Wife* v. *McMillen*, 1 Bibb's R. 409. *Telfair* v. *Telfair*, 2 Desaussure's Ch. R. 271. *Ward* v. *Arredondo*, Hopk. R. 213. *Mitchell* v. *Smith*, 1 Paige's R. 287.)

Personal property follows the person of the owner. The *lex loci* controls it only in the place where the owner dies. The power of the court, however, over personal property, is co-extensive with its power over the person of the owner; and as the owner can here dispose of his personal property, situat d out of the jurisdiction of the court, the court will compel him to do it in favour of creditors.

This court has embraced this case by its rules, for the appointment of receivers. A receiver is invested with the debtor's whole estate. He is authorized to dispose of the

same, including any surplus which may belong to the debtor is a partnership concern. The chancellor can reach all a debtor's interest in a partnership; and the interest of an absent debtor may be attached. (2 Kent's Com. 344, 5, 6.) In the case of *Abraham* v. *Plestoro*, (3 Wend. R. 538,) it was conceded that a person could dispose of his personal property, wherever the same might be situated. As between persons residing in the state, there is no doubt of the jurisdiction of the court, to make a valid decree as to property in a foreign country. In that part of the revised statutes which relates to creditors' bills, there is no exception of the case of a non-resident defendant. It is, therefore, sufficient to show a strict compliance with the provisions of the statute. As a general principle, our courts are open to all alien friends. The remedy is always governed by the *lex fori ;* so much so that a discharge, obtained under an insolvent act of the state or country where the contract was made, cannot be pleaded in another state or country. At all events, the parties to this suit have been before the courts of this country. A judgment has been obtained here, upon which an execution might be issued against the defendant. This has disposed of the objection, if any existed, to the parties being entitled to all the remedies of citizens. None of the cases cited by the defendant establish the position that the writ of ne exeat cannot be applied as to foreigners, temporarily in the country. The case cited from 3 John. Ch. R. 412, is an authority for the complainant. There, Chancellor Kent held that this writ might be used as between foreigners. In *Roddam* v. *Hetherington*, (5 Ves. R. 9,) where the defendant resided in the West Indies, the ne exeat was discharged, on the coming in of the answer, but the defendant was ordered to give security, to abide the decree. The same order was made in the case of *Howden* v. *Rogers*, (1 Ves. & Bea. 129,) where the defendant lived in Ireland. In *Flack* v. *Holm*, (1 Jac. & Walk. 406,) where a ne exeat was granted, the defendant was a foreigner. In *Grant* v. *Grant*. (3 Russ. Ch. R. 598,) a ne exeat was granted, as between foreigners, who, in their own country, would not have been liable to arrest. These authorities show that the fact of the contract's having been

made in a foreign country, has no influence upon the ques-
tion now under discussion.   The defendant cannot rely upon
his affidavit, as it is reponsive to the bill which he should
have answered.   In the face of the record of the judgment for
this debt in our court, it cannot be said that this debt was
contracted in reference to the laws of a foreign country.

Ne exeats are always granted in cases of equitable de-
mands; and also in many cases where courts of law have
concurrent jurisdiction with equity.   But here this court has
exclusive jurisdiction; as all hopes of recovery depend up-
on the defendant's remaining here, and making discovery of
his property.   If the defendant admits he has property out of
the state, but none in it, the reason becomes stronger for re-
taining the ne exeat to enforce a transfer of such property in
discharge of this debt.   We have a right, at all events, to
keep the defendant here until he puts in his answer; and
if he has property out of the state, until the decree.   Even
where a debtor has been held to bail at law, to prevent
a failure of justice a *ne exeat* will be granted.   But this is a
case of mere equitable cognizance; our object is to compel
the defendant to discover the property he has acquired since
his discharge, and to have it applied in satisfaction of the
complainant's debt.   The remedy of the statute is against
the future acquisition of the party, and we cannot avail our-
selves of this remedy except by a discovery.   And the cred-
itor is compelled to come into chancery, in order to reach
the new acquisitions of the debtor, they generally being cho-
ses in action, or property which cannot be touched at law.
The case of *Ashworth* v. *Wrigley*, (1 Paige's R. 301,) is not
applicable.   There no fraud was charged; we show a case
of equitable fraud.   Unless this ne exeat is sustained, there
will be an entire failure of justice.   (1 Eq. Ca. Abr. 133.)
In *Boehm* v. *Wood*, (Turn. & Russ. Ch. R. 332, 343,
344,) it was held that a ne exeat would be sustained, where it
clearly appears that a specific performance will be decreed.
Our case is stronger than this; we have an equitable demand,
and are entitled to a decree for the same.   Lord Eldon's views
as expressed in this last case, appear to have changed.   He
at that time could approach this writ without dread.   A ne

1831.

Mitchell
v.
Bunch.

1831.

Mitchell
v.
Bunch.

exeat is granted on a bill for an account. This case is an exception to the rule that the demand must be equitable to authorize a ne exeat. In *Dunham* v. *Jackson*, (1 Paige, 629,) a ne exeat was granted. Also, in *Denton* v. *Denton*, (1 John. Ch. R. 364, 441.)

The notice of the defendant does not authorize him to call upon us to elect in which court to proceed. It appears the proceedings at law were first instituted. Suppose we should show that these proceedings were ineffectual; would the chancellor, in that case, compel us to elect? In *Thompson* v. *Graham*, (1 Paige, 452,) the chancellor says : " If the complainant proceeds at law it will then be in time to compel him to elect." The proceedings in the circuit court of the United States cannot be noticed by this court, as the courts of the United States are considered as foreign tribunals, although sitting within the state. (*Walsh* v. *Durkin*, 12 John. R. 99. *Baldwin* v. *Hale*, 17 John. R. 272.) A party cannot plead the pendency of a suit for the same cause of action in the courts of a sister state. (*Bowne* v. *Joy*, 9 John. R. 221. *Lord Dillon* v. *Abares*, 14 Ves. R. 357. 2 Mad. Ch. Pr. 315. Mitf. Pl. 204.)

THE CHANCELLOR. It is not necessary in this case to inquire, whether under the 39th section of the title of the revised statutes which relates particularly to this court and its proceedings, (2 R. S. 174,) real property, out of the jurisdiction of the court, can be applied in satisfaction of the complainant's judgment. Independent of the statute, this is clearly a case in which the court has jurisdiction to compel a debtor, whose body is exempt from execution at law, to discover his property, so that it may be applied in satisfaction of his just debts. The case made by the complainant's bill, comes directly within the decision of Lord Hardwicke, in *Edgell* v. *Haywood & Dawe*, (3 Atk. 352,) which decision I believe has never been questioned even in England; although the court of chancery there will not interfere in cases provided for by the bankrupt act, or where the plaintiff can by a real incarceration of the debtor compel him to apply all his property in payment of his honest debts. In that case, as in this, the defendant's body could not be taken in execution; and the

judgment was entered to be levied of his property only. Whether the defendant has any part of his property vested in lands, and whether it is of that kind of property which can be reached by an execution at law, cannot be ascertained until the coming in of the answer. It will then be in time to raise the objection that this court cannot make a decree concerning real estate which is situated in a foreign country.

The original and primary jurisdiction of this court was in personam merely. The writ of assistance to deliver possession, and even the sequestration to compel the performance of a decree, are comparatively of recent origin. The jurisdiction of the court was exercised for several centuries by the simple proceeding of attachment, against the bodies of the parties, to compel obedience to its orders and decrees. Although the property of a defendant is beyond the reach of the court, so that it can neither be sequestered or taken in execution, the court does not lose its jurisdiction in relation to that property, provided the person of the defendant is within the jurisdiction. By the ordinary course of proceeding, the defendant may be compelled either to bring the property in dispute, or to which the complainant claims an equitable title, within the jurisdiction of the court; or to execute such a conveyance or transfer thereof, as will be sufficient to vest the legal title, as well as the possession of the property, according to the *lex loci rei sitæ*. Thus in *Penn* v. *Lord Baltimore*, (1 Ves. sen. 444,) Lord Hardwicke decreed the specific performance of a contract relative to the boundary between the colonies of Pennsylvania and Maryland. So in *Archer* v. *Preston*, cited by Lord Nottingham, and by Lord Keeper Guilford, in the case of *The Earl of Arglasse* v. *Muschamp*, (1 Vern. R. 77, 135,) the court decreed the specific performance of a contract respecting lands in Ireland; the defendant being temporarily within the jurisdiction of the court. In *Farley* v. *Shippen*, (Wythe's R. 135,) the court of chancery of Virginia decided that it had jurisdiction to decree a conveyance of lands lying in an adjoining state. That, although it could not award a sequestration against those lands in execution of the decree, it might award an attachment against the person of the defendant for a con-

1831.

Mitchell
v.
Bunch.

tempt in refusing to perform the decree. (*See also Toller v. Carteret*, 3 Vern. R. 494 ; *Hughes* v. *Hall*, 5 Munf. R. 431 ; *Cranstown* v. *Johnson*, 3 Ves. 170 ; 5 id. 277, S. C ; *Earl of Kildare* v. *Eustace*, 1 Vern. R. 419 ; *Earl of Derby* v. *Duke of Athol*, 1 Ves. sen. 203 ; *Guerrant* v. *Fowler & Harris*, 1 Hen. & Munf. R. 5 ; *Messie* v. *Watts*, 6 Cranch, 148 ; and *Ward* v. *Arredondo*, 1 Hopk. 213.)

Although the question, how far the courts, of our country are authorized to proceed against foreigners temporarily within their jurisdiction, in relation to contracts made, in another country, has been frequently raised, it appears now to be well settled, both in this state and in England, that they have jurisdiction to enforce the performance of such contracts, where the party proceeded against is within the jurisdiction of the court. And it makes no difference whether the defendant is actually domiciled here, or is temporarily within the jurisdiction at the time of the service of the process to appear and answer the plaintiff's demand. (*Sicard* v. *Whale*, 11 John. R. 194. *Peck* v. *Hozier* & *Mulock*, 14 id, 346. *Smith* v. *Spinolla*, 2 id. 198. *Imlay* v. *Ellefsen*, 2 East's R. 453.) Neither is this practice of entertaining suits against, or between foreigners of recent origin, or confined to the courts of this country and of England. By referring to the Digest, it will be found that the courts of Rome not only took cognizance of suits between foreigners, but that a judge was specially authorized to discharge that duty. . The office of *Prætor Peregrinus* was created for the express purpose of administering justice between foreigners, or strangers, who resorted in great numbers to the imperial city ; and perhaps also between strangers and citizens. Digest, lib. 1, tit. 2, fr. 2, § 28.) And a similar office, and with substantially the same powers, is said to have existed among the Athenians. (Taylor's Civil Law, 211.) By the law of Holland, also, the person of a foreigner may be arrested, either in *securitatem debiti*, or for the purpose of giving jurisdiction to a tribunal which is not the natural judge of the party, because he is not domiciled within its jurisdiction. (Van Der Linden's Inst. 430.) The *meditatione fugæ warrant* of Scotland is also used, as well for the purpose of securing the persons of

strangers, temporarily, within the country, as to obtain secu-
rity from those who intend to leave Scotland for the purpose
of eluding the process of the court. (1 Bell's Dict. tit. Arrest-
ment. 2 id. tit. Meditatio, fugæ. Ersk. Princ. 17.) By the
French code, foreigners, not resident in France, may be ci-
ted before the tribunals of that country to enforce the execu-
tion of contracts entered into with Frenchmen, either in
France or elsewhere. (Code Nap. lib. 1, tit. 1, ch. 1.) And
they may also be arrested on commercial contracts. In most
of the countries, however, where the civil law prevails, it
does not appear to be fully settled whether their courts can
arrest a foreigner, who is only temporarily within the juris-
diction, at the suit of another foreigner, who is also a non-
resident on a commercial contract made abroad. (See *Janet*
v. *Maidmont*, and *Scott* v. *Carmichael*, 2 Bell's Com. 564.)

In this court the writ of ne exeat is simply a means of ob-
taining equitable bail ; and however liable it may be to abuse,
when used politically as it formerly was in England, it is as
harmless here as the ordinary process of the courts of com-
mon law, usually denominated bailable writs. Although
in form it prohibits the defendant from going out of the juris-
diction of the court, yet it is a matter of course to discharge
the writ, upon the party's giving security to answer the com-
plainant's bill, where a discovery is necessary, and to abide
such order and decree as may be made in the cause, and to
render himself amenable to the process of the court, which
may be issued to enforce the performance of the decree.
*Woodward* v. *Schatzell*, 3 John. Ch. R. 412. *Gibert* v. *Colt*,
1 Hopk. R. 496. *Russell* v. *Asby*, 5 Ves. 96. *Atkinson* v.
*Leonard*, 3 Bro. C. C. 218. Chitty on Prerog. 23.) If this
court has jurisdiction of the cause, and the defendant intends
to leave the state, so that the decree against him would neces-
sarily prove ineffectual, the complainant has a right to this
equitable bail, on producing proper evidence of that fact and
of the actual existence of the equitable claim for which the
suit is instituted.

In the English court of exchequer this writ is not used ;
but an order for security, in the nature of a ne exeat or of
equitable bail, is obtained upon motion. (1 Fowler's Exc.

1831.

Mitchell
v.
Bunch.

Prac. 36, 203.) The form of the order in that court appears to be, that the defendant, within one week after service of the order, enter into a recognizance with proper sureties, not to depart the kingdom without putting in his answer and performing such decree or order as the court may thereafter make in the suit. (*Attorney General* v. *Mucklow,* 1 Price's R. 289. *Davis* v. *Heron,* in 1753. id. 291, note.) In a cause before that court in 1724, such an order was made against a defendant, who resided at Oporto ; although, in another case against the same defendant, who had answered, and, I presume, had denied the equity of the complainant's bill, the court refused the order. (*Whitehead* v. *Murat,* Bunb. R. 183.) The court of exchequer, in Ireland, have adopted the formal process of a ne exeat to obtain equible bail. It issues under the exchequer seal, and is granted as a matter of course, when properly applied for, according to the 80th general rule of that court. (Howard's Eq. Side, 651, 2.)

As a general rule, this process is only issued for an equitable demand, and cannot be allowed on a mere legal claim. But, where there is a concurrent jurisdiction between the court of chancery and courts of common law, as in the case of bills for an account, it may be granted, although the defendant could have been arrested by process issued out of a court of law. (1 P. Wms. 263, n· 1. *Russell* v. *Asby,* 5 Ves. 96. *Jones* v. *Sampson,* 8 id. 593. *Jones* v. *Alephsin,* 16 id. 470.)

In *Baker* v. *Dumaresque,* ( 2 Atk. 66,) Lord Hardwicke restrained a defendant from going out of the kingdom to the place of his abode, until he should give security to abide the decree. In *Archer* v. *Preston,* before cited, a ne exeat was granted against a defendant temporarily in England ; and in *Atkinson* v. *Leonard,* the writ was granted in favor of an inhabitant of Antigua, against a resident of the same place, who merely came to England with his wife for medical advice. In *Howden* v. *Rogers,* ( 1 Ves. & Beam. 129,) it was allowed against a defendant domiciled in Ireland ; and who only came to England, temporarily, on business. In the case of *Flack* v. *Holm & Ludert,* ( 1 Jac. & Walk. 406,

Lord Eldon granted a ne exeat against a Russian, who resided at St. Petersburgh, and for a debt contracted at that place as a commission merchant. And in the recent case of *Grant* v. *Grant*, (3 Russ. R. 598,) the writ was allowed against a resident of Jamaica, in respect of a debt contracted there, between persons who were resident at that place; although, by the laws of Jamaica, the defendant could not have been arrested for such debt.

In the case of *De Carrier* v. *The Abbe De Callonne*, (4 Ves. 578,) Lord Eldon discharged a ne exeat, granted by the master of the rolls, in favor of one French emigrant against another. But it was evidently on the ground that the debt was not due, according to the agreement and understanding of the parties, at the time the writ was allowed. In this court, in *Woodward* v. *Schatzell*, (3 John. Ch. R. 412,) Chancellor Kent, after a full examination of the cases, decided that the writ may be granted in the case of foreigners, and in respect to demands arising abroad. Chancellor Sanford came to the same conclusion in *Gibert* v. *Colt*, (1 Hopk. R. 496,) and granted a ne exeat against a citizen of Maryland, who was temporarily in this state.

If the complainant is entitled to this writ against a foreigner who is merely here for a temporary purpose, this appears to be a proper case to retain the process against the defendant. It is not denied that the complainant has a just and equitable demand against him, to the extent of nearly $80,000, including interest; and that the defendant has the means of paying the whole amount. But his property is in such a situation that the complainant cannot reach it, except by the aid of this court, and by detaining the defendant within its jurisdiction, to abide such order or decree as may be found necessary to compel him to apply his property in satisfaction of the complainant's claim. In the language of Senator Allen, in *Pettit* v. *Candler*, (3 Wend. R. 625;) "What can be more reasonable than that every man possessing the means should pay his honest debts; and if he possess the means, and place them in a situation beyond the reach of legal process, is there any injustice in compelling him to render an account of the property thus fraudulently

concealed ?"    Although the principal part of the defendant's property is vested in a partnership with others, that does not discharge him from the moral obligation of applying it in satisfaction of the complainant's debt, after all just claims of his copartners and the creditors of the firm have been provided for.  This court will not require of him an impossibility.  But so far as he can control his interest in the partnership funds, consistently with the laws of the country in which those funds are now placed, and without prejudice to the rights of others, he may be required to apply his interest in that species of property in satisfaction of the complainant's debt.

The mere pendency of a suit in a foreign court, or in a court of the United States, cannot be pleaded in abatement, or in bar to a proceeding in a state court.  If the complainant had proceeded to judgment there, it would indeed present a different question ; as the original judgment in the supreme court of this state, which forms the foundation of the complainant's bill, would be merged in such new judgment.  In *Maule* v. *Murray,* (7 T. R. 470,) the court of king's bench refused to discharge a defendant, who had already been arrested and held to bail, in this state, for the same demand, And in *Imlay* v. *Ellefsen,* (2 East, 453,) the same court refused to discharge a defendant, who had already been holden to bail, for the same cause of action, in a suit in Norway. But, I apprehend, the principles of these decisions can hardly be extended to the circuit court of the United States, sitting within the limits of our own state.  This court will judicially notice the fact, that the arrest of the body of the defendant on mesne process in that court, is for the purpose of compelling him to pay the debt or to render himself in execution in satisfaction thereof; and that the proceeding in that court, in an action of debt on the judgment by which it will be finally merged in the new judgment to be obtained there, is wholly inconsistent with the proceeding by bill in this court to aid execution of the judgment of the supreme court.

It certainly cannot be necessary for the protection of this complainant's rights, that the defendant should be compelled to give security in two different suits pending at the same time, in different courts, and for the recovery of the same

·debt. The ne exeat must therefore be discharged, unless the complainant, within ten days after notice of this or- der, consents to release the defendant from his arrest in the circuit court, upon his entering an appearance or filing com- mon bail in that suit. It is not necessary at this time to de- cide, whether this is a case in which the complainant may be compelled to elect in which suit to proceed ; as the notice is not properly framed to compel an election between this suit and that in the circuit court. But this court may excuse the defendant from giving bail in both suits, when one is suffi- cient for all the purposes of justice. If the complainant con- sents to relinquish the bail in the circuit court, the defendant may still be discharged from the ne exeat here, upon his giv- ing the usual security to appear and answer the complainant's bill, and to obey and abide such order and decree as may be made by this court in the premises. Such security to be approved of by the vice chancellor or injunction master of the first circuit ; on notice to the complainant, so that he may be heard in relation to the sufficiency of the sureties offered.