## GLEASON *vs.* BISBY.

A writ of *ne exeat* is not a prerogative writ, but mere ordinary process of a court of equity, to be used to prevent a party from evading justice by withdrawing himself from the jurisdiction of the court.

To warrant the issuing of a *ne exeat*, there must be a debt or duty existing at the time, and so far mature at the time that present payment or performance can rightfully be demanded; and this debt must be an equitable debt.

A *ne exeat*, at the time of issuing, should be marked by the officer allowing it, in the sum in which bail is to be taken thereon; and if the writ is actually marked by the clerk, it will be presumed to have been so done in pursuance of the order of the court.

It is almost a matter of course to discharge a party from a *ne exeat*, upon his entering into sufficient bonds to abide the decree of the court, and render himself liable to its process.

A *ne exeat* will not be allowed, unless it is apparent from the bill that the performance of the decree in the suit in which it is applied for, can be enforced against the person of the defendant, or the party against whom it is asked.

A *ne exeat* is proper only for the purpose of detaining the person of the defendant to respond to the decree of the court; and when the cause of action is such that the *person* of the defendant cannot be touched under the decree, either by execution or attachment the writ will not issue.

THE bill in this case states that the complainant sold to the defendant three hundred mulberry trees, of the kind called *Morus Multicaulis,* for $300, for which the defendant executed two notes to the complainant, one for $25, payable one day after date; and one for $275, payable one year after date. Soon after the notes were executed, the defendant called upon the complainant to pay the $25 note, who paid him twenty-five dollars; and the complainant, by mistake, handed the defendant the note for $275. The complainant did not discover the mistake until

Mar. 1841.

Gleason
v.
Bisby.

some time afterwards, and then called upon the defendant to return the note so handed to him, offering to give up and cancel the note for twenty-five dollars. The defendant not complying with this offer, the complainant filed this bill, asking for a delivery to him of the larger note, or payment of the amount thereof. The bill alleges no fraud on the part of the defendant; and does not state that the complainant is unable to prove the facts without a discovery from the defendant. The answer, called for upon oath, admits the mistake, but sets up a defence to the note. It states, also, that the note, when received by the defendant, was mutilated by tearing off the name of the maker, without looking at the amount, and laid away without any knowledge of the amount until some time afterwards; and insists, by way of demurrer in the answer, that the complainant has an adequate remedy at law. After the answer was filed, the complainant, upon affidavit of the facts stated in the bill, and of the admissions, and that the defendant was about to remove to Wisconsin, out of the jurisdiction of this court, obtained, upon an *ex parte* application, a *ne exeat* against the defendant, upon which he was held to bail.

The defendant now presents a petition to be discharged from this *ne exeat,* stating, among other things, that the order allowing the writ did not direct the sum in which the defendant should be held to bail, though he was actually held to bail in the sum of $600. The hearing is now upon the motion for the discharge of the defendant, under the prayer of this petition.

*D. H. Chandler,* for the motion. The order for the *ne exent* does not define or specify the sum in

which the writ should be marked. This is indispen-
sable to its regularity, and the sum should only be
sufficient to cover the complainant's demand. (1 Hoff-
man's Practice, 96; Gilbert vs. Colt, 1 Hopkin's Rep.
500 ; Bochin vs. Wood, 11 Condensed English Ch.
Rep. 188 ; McNamara vs. Dwyer, 7 Paige, 239.)

A writ of *ne exeat* is in the nature of equitable
bail, and will not be granted when, if the suit was at
law, bail would not be required. (Pannell vs. Tay-
lor, 11 Condensed English Ch. Rep. 59 ; 11 do.
189.) A *ne exeat* will issue for the balance of an
account; but where a bill was filed for the balance
of an account, and the defendant had been discharged
under the non-imprisonment act, a *ne exeat* against
him will be discharged. (Ashworth vs Wrigley, 1
Paige, 301.) Since that case was decided, the act
to abolish imprisonment for debt has been passed,
which is a sort of general discharge by statute of all
debtors from imprisonment. And although the court
of Chancery have decided (Brown vs. Haff & Lyon,
5 Paige, 235) that the above act does not prohibit
this court from allowing writs of *ne exeat* in cases
of equitable cognizance. Yet the court will never
send out this writ, unless they can see its necessity
to keep the defendant to abide the order of the court,
and unless such order can be enforced by imprison-
ment of his person. If the decree which the court
would finally make, could not be so enforced, the
writ is tyrannical and useless, and will not be issued.
The defendant's answer may be read on this motion.
(Thorm vs. Halsey, 7 Johns. Chan. Rep. 189 ; Leo
vs. Lambert, 3 Condensed English Chan. Rep. 462.)
The answer shows that the writ should not have
issued. It denies all the equity of the bill, and shows

Mar. 1841.

Gleason
v.
Bisby.

that the complainant has no claim for the note or the money, and that no decree could be had upon the bill in favor of the complainant. The writ of *ne exeat* should never issue unless the court can see, at the time it is granted, that it can enforce its decree when made, against the person of the defendant. In a bill for a specific performance, the court will not grant this writ unless it can clearly see that a decree will be made for the complainant, which the defendant should obey. (2 Russell's Reports, 604 ; 5 Paige, 235.) In this case, the note in question is now due.

The court will not content itself, if they entertain jurisdiction, with a decree that the defendant deliver the note to the complainant, so that there can be another suit at law upon the note. The court will direct the defendant to pay the amount of the note to the complainant ; and such decree cannot be enforced by execution against the person of the defendant, and therefore there is no use of detaining him in this state for that purpose.

This writ will not be issued where there is an adequate remedy at law. In this case, so far as appears from the bill, the complainant has an adequate remedy at law, and should never have come here ; and we have taken the objection in the proper way. The complainant has shown no inability to prove his case at law, and he does not charge fraud ; at any rate, if the writ is marked too high, it may be reduced in amount ; and the defendant will be discharged of course, upon giving security to abide the decree of the court. (2 Paige, 606 ; 7 Paige, 239.)

*A. P. Hascall* and *W. S. Bishop, contra.* This is a case of strong equity. The complainant is the

owner of a note which, by mistake, has come to the hands of the defendant, and which he inequitably refuses to give up to the complainant. The defendant is about to leave the state; and if he departs, we shall lose all remedy and be deprived of any redress. In such case, a *ne exeat* is proper and the only available remedy for us. The court has jurisdiction of the subject matter of the bill, for the purpose of discovery; and having obtained it for that purpose, they can continue it for the purposes of relief; and this writ is essential to any effectual relief. (1 Hoffman's Practice, 91 to 96; 1 Paige, 629; 7 Paige, 95.) The amount endorsed upon the writ is endorsed by the clerk, and this endorsement must be presumed to be in pursuance of some order of the court, though such order is not now before the court. The answer cannot be read upon this motion. If the proofs taken in the cause were filed, we should have no objection to reading the answer, if the proofs contradicting it could be read. The act to abolish imprisonment for debt, does not interfere with the power of this court in issuing writs of *ne exeat*, as is properly held in 5 Paige, 235. The court has power to issue the writ—we have a right, under our case, to the writ; and if it is retained, we shall collect our claim; and if it is discharged, we shall lose it, and there will be a failure of justice. (Porter vs. Spencer, 2 Johns. Ch. Rep. 169.)

THE VICE CHANCELLOR. The writ of *ne exeat* is not, in this age and certainly not in this country, looked upon as a prerogative writ. It is a mere ordinary process of the court, to be used, under certain circumstances, to enable it to compel parties, as be-

Mar. 1841.

Gleason
v.
Bisby.

tween themselves, to do justice in relation to matters brought before the court for adjudication.

It is employed to prevent a party who owes an act of justice to his fellow citizen, and to enforce which a suit has been instituted, from withdrawing himself from the jurisdiction of the court, so that he cannot be compelled by its process, to abide its decree. It is, in other words, mere equitable bail, and it is, in fact, in the court of Chancery, and leads to results almost identical with common bail upon a *capias*, in a suit at law. It has a parallel and similar force and efficacy. To warrant the issuing of a *ne exeat*, there must be a debt or duty existing at the time, and so far mature at the time, that present payment or performance can rightfully be demanded. This, too, must be an equitable debt. If the complainant has an adequate remedy at law, so that he can hold the defendant to bail by suit at law, he cannot obtain this writ here. There are some exceptions to this last rule, where the jurisdiction of courts of law and equity are concurrent, as in cases of account. It may be allowed in aid of a bill for a specific performance of a contract for the sale of lands. (Bochin vs. Wood, 1 Turner and Russell, 332 ; Brown vs. Haff and Lyon, 5 Paige, 235.) The principles upon which the writ is allowed and issued, are generally understood by the profession, and no reference to authorities can be necessary. At the time the writ is issued, it should be marked by the officer allowing it, in the sum in which the defendant is to be held to bail, and this sum should only be sufficient to cover the complainant's demand. (Bochin vs. Wood, 1 Turner and Russell, 332 ; McNamara vs. Dwyer, 7 Paige, 239.) In this case, one of the

objections of the defendant is, that there is no order 

for marking the writ. It appears, however, that the writ is marked by the clerk, and it must be presumed that he so marked it in pursuance of the fiat of a proper officer, though such fiat is not produced. Indeed, in this case I know the proper order was made, though the memorandum may not have been preserved. I shall not hold this to affect the regularity of the process; but if the writ is marked in too large a sum, the amount can be reduced. Indeed, for that matter, it is almost a matter of course to discharge the party from the writ, upon his entering into sufficient bonds to abide the final decree of the court, as to the subject matter of the litigation, and render himself amenable to its process. (Mitchell vs. Bunch, 2 Paige, 606.) Such an order will be made in this case, unless upon farther investigation the court becomes satisfied that the defendant should be discharged entirely.

This suit is brought for the purpose of compelling the defendant to restore a note executed by him, and of which he obtained possession by mistake; or for payment of the amount. The note is past due, and has been mutilated by tearing off the maker's name. It is perfectly apparent that a restoration of the note would be an idle ceremony. In the first place, in its present shape it would be of no value; and if of value, would drive the complainant to a suit at law to recover the amount. If this court have properly obtained jurisdiction, they would retain it for the purpose of doing full justice to the parties, and that could only be done, if the justice of the case was with the complainant, by decreeing the defendant to pay the amount of the note. The complainant has not sta-

ted that he should be unable to prove the facts in a suit at law, without a discovery from the defendant, and the defendant insists in his answer that the complainant has an adequate remedy at law.

I must say that I doubt whether the complainant has made a case full enough to claim the benefit of the jurisdiction of this court. But if he has, the decree, if any in his favor, must be for the payment of the amount of the note. This would be substantially a decree for a matter founded upon contract. An execution of such decree could not be enforced against the person of the defendant.. The Chancellor, in Ashworth vs. Wrigley, (1 Paige, 301,) has decided that when a defendant has been discharged under the non-imprisonment act, that a *ne exeat* upon a bill for an account, without any charge of fraud, would also be discharged. The plain principle of this decision is, that inasmuch as the defendant had been discharged by competent authority from imprisonment, the *ne exeat* would be useless. If the writ had been retained and a decree passed against the defendant for the money demanded, no process could have gone against the person to enforce its payment; and therefore there was no use in keeping the person to answer the decree, for which the person could not finally be made to answer. This decision was made in 1828. Since that time, the act to abolish imprisonment for debt, of 1831, has been passed. This is in some sense a general non-imprisonment act.

It is true, as said by the Chancellor, in the case of Brown vs. Haff and Lyon, (5 Paige, 235,) that this act does not affect the power of this court to issue a *ne exeat* in any case of equitable cognizance; and I apprehend the court have such power, and will exer-

cise it in proper cases. But I apprehend they will

confine its exercise to cases where they can see that they can enforce their decrees by process against the person, either by attachment or execution. Thus, in a case of specific performance of a contract for the sale of lands, they will exercise it, because they can enforce the execution of a deed by attachment; and in creditors' bills, because they can enforce a delivery of the choses in action by attachment and imprisonment—and so in many other cases that may be named, of equitable cognizance. But if they see, when the *ne exeat* is applied for, that the order of the court cannot be enforced against the person, it should not be issued; and if issued, should be discharged. It can be of no use to detain the person of the party, when his person cannot be reached to enforce obedience to the final decree of the court. This would be a trifling with the liberty of the citizen, which would be of no use to any one. The only ground upon which the person is detained by the *ne exeat*, is, that the person may be present at the time the decree is pronounced, to respond to it. If the person of the defendant cannot be made to respond to the decree, it is worse than idle to keep him. In this case there is no injunction to restrain the defendant from removing his property where he pleases. If he himself is detained, he may move his property out of the jurisdiction of the court.

If a decree is made against him in this cause, an execution can only go against his property, and not against his person. The only possible advantage of keeping him here, is to detain him within the jurisdiction of the court, until a decree is had in this cause—an execution issued thereon—returned unsa-

Mar. 1841.

tisfied—and a creditor's bill filed upon such return to reach his property, and have him within the jurisdiction of the court, to compel a transfer which may be enforced by attachment against the person. This is altogether too remote a duty to justify the detention of this defendant under this writ. It would be hardly proper to detain him, not simply to respond to the decree in this suit, for which his person cannot be made responsible; but to respond to another suit hereafter to be commenced in a certain contingency.

Under my view of the scope and intention of this writ, and of the operation of the act of the legislature, this writ must be discharged; and if there should be a "failure of justice," it is only in consequence of the act to abolish imprisonment for debt.

Writ discharged, with $12 costs.