Jewett, J.,
delivered the opinion of the court. The complainant insists that that part of the decree dismissing his bill with costs should be reversed, and that the defendants, Jesse Ryder and Aaron L. Ryder, should be decreed to be trustees for the judgment debtor, William Ryder, for the land in Indiana, for which they took conveyances in their own name, and for which William Ryder paid the purchase money to the amount of $1500.
The ground assumed for a decree declaring John Ryder and Aaron L, Ryder to be trustees for William Ryder, of the land in Indiana, was, that as he had advanced about one-third part of the money expended in the purchase of these lands, for which Jesse and Aaron L., had taken the title in their names, at common law, he was entitled to that proportion of the land purchased as the cestui que trust of a resulting trust of which Jesse and Aaron L., were the trustees; and that in the absence of proof to the contrary, the common law was presumed to be the law of Indiana, the lex loci contractus, by which the effect of the trust was to be determined. The complainant’s bill goes upon the ground that by reason that William Ryder, pursuant to an agreement made between him and Jesse and Aaron L., advanced a certain proportion of the purchase money for their lands, and that the title was taken in the names of Jesse and Aaron L., a trust in them, to the extent of the money advanced by him, resulted to him, which the complainant was entitled to have applied in payment of his debt against him by the court of chancery. In that respect the bill alleges that in June, 1836, William Ryder, Jesse Ryder and Aaron L. Ryder, entered into an arrangement or agreement to purchase western lands together. That the agreement was, that William and Jesse should go to the western country together to select and purchase the land; that each of said three persons should furnish a part of the money with which to pay the purchase price; that the title to the land purchased should be taken in the joint names of the *366 three, or in the joint names of Jesse and Aaron L., and that each of the parties should have an interest in the lands purchased, in proportion to the amount of money furnished by him for such purpose.
It is then alleged that William and Jesse, in June, 1836, did go, pursuant to the agreement, to the State of Indiana; ' that William furnished between $1400 and $1500 towards the purchase money, and that Jesse expended that money, and purchased therewith and with other money furnished by Jesse and Aaron L., about five thousand acres of government lands, situate in certain counties named, in Indiana, for and on account of William Ryder, to the extent of and in proportion to the sum of money so furnished by him; that the whole amount of money so expended was between $5000 and $6000, and that, the proportion of the lands so purchased, with the money furnished by William Ryder was about one thousand two hundred acres; that the title to the lands so purchased by consent of William Ryder was taken in the joint names of Jesse and Aaron L., and that the legal title to the said lands still remained in Jesse and Aaron L., except as to about one hundred and sixty acres which they had since sold and conveyed.
The bill called for an answer by William Ryder, Jesse Ryder and Aaron L. Ryder upon oath, which they severally put in ; and in relation to these lands their answers set up the facts substantially, as follows: William Ryder says that before he went to the west in June, 1836, he had determined to purchase some new lands in the west for the sole and exclusive benefit of his children; that being informed that Jesse and Aaron Ryder were going west to invest money in the purchase of new lands, he called on them and proposed to go in company with them, upon which he was told that Aaron L. was not going, but that Jesse was going, to purchase for them; that then William proposed to go and purchase with him, and that it was then agreed that William and Jesse should go in company to purchase their lands *367 together, and that the title should be taken in the names of Jesse and Aaron L.; that at the time of the agreement, William intended that the purchase so to be made with the money so to be furnished by him should be for the use and benefit of his children; that afterwards William Byder went with Jesse Byder and Bichard H. Williams to Indiana; that William furnished about $1500, and Jesse and Aaron L., respectively, an equal amount, which, after they arrived in Indiana, he gave to Jesse Byder, with directions to invest the same in such lands and to take the title in his and said Aaron L. Byder’s names, for the use and benefit of the children of William, and to hold the same for their use; and if at any time he desired to dispose of or convey the lands, or to declare the trust so held by him and said Aaron L., then, Jesse and Aaron L. should convey and declare said trust and lands to William Byder’s children; that Jesse Byder took the money, and with an equal amount from Jesse and Aaron L., Jesse purchased, as he informed William, about five thousand acres in the name of Jesse and Aaron L. It is further alleged that it was also agreed that if any division was thereafter made of said lands, that the portion purchased with the money furnished by William should be conveyed to said children for their use and benefit, or if the lands should be sold, then that the proceeds of such portion should be paid to them for their use and benefit. William Byder says that he was informed by Jesse, who in his answer asserts the fact, that in two or three years after-wards he and Aaron L. executed a declaration of the trust as before stated. On the coming in of these answers, the children of William Byder, by an amendment of the bill were made parties defendants. It merely alleges that they claim or pretend some right or interest as cestuis que trust, or otherwise, in or to the share of the aforesaid government lands purchased with the money furnished by said William By der, and prays an answer to the bill, waiving their oaths. The answer of the children of William Byder was put in *368 and it sets up that they were informed and believed it to be true, that in the summer of 1836, William Ryder, Jesse Ryder and Richard H. Williams, went to Indiana to purchase new lands; that before they went William informed them that he was going to place in the hands of Jesse $1500, to lay out and invest in their lands for the sole use of them, his children, and that he should direct Jesse to lay out the money as he should think to be most advantageous for them, and take the title in the names of Jesse and Aaron L. Ryder to hold in trust for their use ; that soon after the return of William and Jesse Ryder from Indiana they informed them, that before the purchase of any lands, William Ryder delivered to Jesse $1500, directing him to lay it out in such lands to the best advantage for their use, and to take the title in the names of Jesse and Aaron L., and hold the same in trust for their use; that Jesse, at the same time, informed them that he did receive said money in pursuance of such directions and agreement, which, with the money furnished by himself and Aaron L. Ryder, he laid out in the purchase of such lands, and that they were interested in such land to the extent of $1500, and that the title was taken in the names of Jesse and Aaron L., to hold in trust for them to the extent of their interest. They further set up that in January, 1839, Jesse Ryder delivered to them an instrument in writing, duly executed by Jesse and Aaron L. Ryder, under their hands and seals, conveying the interest of said children in said lands to them for their sole use and benefit.
The principal facts set up by the defendants as a defence against the complainant’s claim, in respect to the creation and execution of the trust for the benefit of the children of William Ryder, are, I think, substantially proved by the evidence in the case. The answers of William, Jesse and Aaron L. furnish evidence of the truth of them. And the evidence given by Jesse as a witness, as also that given by Williams, and the declaration of trust read at the hearing, tend strongly to confirm them, notwithstanding there are *369 witnesses who testify to some declaration made by William Ryder tending to a contrary conclusion. It was contended on the argument, in behalf of the complainant, that the investment of the $1500 by William Ryder, although in trust for his children, was intended to defraud his creditors then existing, or who should thereafter exist; that it was in the nature of a voluntary conveyance to defraud creditors, and was, therefore, void as to such creditors. One answer to this, and which I think is sufficient, is, the complainant has made no such case by his bill. That goes solely, in respect to these lands, upon the ground that William Ryder was the equitable owner of them; the lands having been purchased by his direction and with his money, and the title taken and held for his use and benefit by Jesse and Aaron L. Ryder. There is no allegation or suggestion in the bill that the investment made by William for the benefit of his children was voluntary or fraudulent as against his creditors. The only point which the bill attempts to put in issue in respect to these lands is, whether or not the purchase of them was in trust for the benefit of William Ryder; there is no allegation that if the character of the transaction was, in fact, nominally as set up by the defendants, that it was fraudulent. The answers assert, and the evidence shows, that the purchase and investment made, was not for the benefit of William, but for his children. That defeats the bill in regard to the complainant’s claim to have those lands applied in payment of his demand. If his rights depended upon the fact that the purchase and investment for the benefit of the children of William Ryder was fraudulent as against him, it should have been so alleged, for it is an invariable and universal rule of the court of chancery, to found its decrees on some matter put in issue between the parties by the bill and answer; and the rules and practice of that court required that in framing the bill the matter of it should be plainly and succinctly alleged, with all necessary circumstances, as time, place, manner, and *370 other incidents, and if any material facts were denied by the answer, and the complainant proceeded to substantiate the facts charged in the bill, he could put no interrogatory to witnesses that did not arise from some fact charged in the bill. It makes no difference whether the defendant has, by way of avoidance set up a distinct and independent fact, or merely denied the matters alleged in the bill. If the existence and truth of the facts thus set up by a defendant be controverted, the defendant must prove it; and the complainant may examine witnesses to disprove it; but when the fact set up by a defendant is made out, either by proof or the admission of the complainant, and destroys his title to relief, it is not admissible for the complainant, after the fact is made out, to impeach it on a ground not taken in his bill, and on a ground not arising from the issue between the parties.
If the complainant’s rights- depended upon showing that the creation and execution of the trust for the use and benefit of the children of William Ryder was voluntary and fraudulent as against him, his course was plain. He should have amended his bill and stated the facts on which he meant to impeach it. The defendants would have been required to answer such facts, and if denied, it would then have been competent to have supported .the allegations by proof, (Ferguson v. Ferguson, 2 Comst., 360; Kelsey v. Western, Id., 500; Thomas v. Austin, 4 Barb., 265.)
The rule is explicit and absolute, that a party must recover in chancery according to the case made by his bill or not at all, ‘ secundum allegata’ as well as 'probata.'
Notwithstanding the forty acres of land, to which William Ryder, in his answer, admits he has title, is situated out of this state, in the State of Indiana, I think that the court of chancery in this state had jurisdiction to compel him to execute such a conveyance or transfer thereof as would be sufficient to vest the legal title, as well as the possession of the land. (Mitchell v. Bunch, 2 Paige, 606.) My conclusion, *371 therefore, is, that that part of the decree of the court below which dismisses the bill of complaint as against the said William Ryder, with costs against the complainant, as to him should be reversed, and that the residue of the decree should be so modified as that its provisions against the defendants, Robert H. Lounsbury, Jesse Lounsbury and Henry Lounsbury, shall apply as well against William Ryder as against them, and that neither party shall have costs as against the other on this appeal.
All the other judges, except Welles, J., who was absent, concurred.
Decree modified accordingly.