MARGARETHA SCHREIBER

*v.*

CHARLES SCHREIBER.

[Decided November 16th, 1915.]

While the surety on a *ne exeat* bond does not stand in the position of bail upon a recognizance to the extent that he may surrender his principal, yet the obligation of the bond being that the party against whom the writ is issued will remain personally amenable to orders and proceedings in the court, payment of the penalty of the defaulted *ne exeat* bond may be enforced from the surety in a court of chancery by summary proceeding on an order to show cause.

On petition for order directing surety upon a *ne exeat* bond to pay the amount of the penalty of the bond into court.

*Mr. Charles W. Kappes,* for the petitioner.

*Mr. Maurice J. Breen,* for Mr. William L. Schultz, surety.

STEVENSON, V. C.

The question which I understand is to be presented to the court of errors and appeals for settlement, is whether the practice which has prevailed in the court of chancery for many years, of enforcing the payment of the penalty of a defaulted *ne exeat* bond from the surety in the court of chancery by a summary proceeding on order to show cause served upon the surety, is correct and lawful or not.

The practice which has been followed in many cases to my knowledge is based upon the opinion of Chancellor Runyon in the case of *Wauters* v. *Van Vorst, 28 N. J. Eq. 103,* which perhaps may be considered as containing a *dictum* favoring the practice, and particularly the opinion of Vice-Chancellor Reed in *Elliott* v. *Elliott, 36 Atl. Rep. 951,* which seems to be a direct authority sustaining the power of the court of chancery in the premises.

Of the two cases cited by Chancellor Runyon and Vice-Chancellor Reed (*Musgrave* v. *Mendex, 1 Mer. 49,* and *Utten* v. *Utten, 1 Mer. 51*), the former, the *Musgrave Case,* is not directly in point because the surety on the bond against whom the order went was a party to the suit. The *Utten Case,* however, decided by Lord Chancellor Elden in 1815, seems to be a direct precedent establishing the power of the court of chancery in England to order the sureties on a *ne exeat* bond to pay the amount of the penalty into court. The order apparently went not only against the defendant but his sureties as well. Even in the *Musgrave Case* it must be observed that the liability of the surety, who happened to be one of the defendants, which was summarily enforced, had nothing to do with the relief prayed for in the bill but was wholly a collateral matter. The proceeding was against Mendex not as a co-defendant but as an obligor on the *ne exeat*

bond. The *Musgrave* and *Utten Cases* are cited by Mr. Daniel as authorities for the proposition that, where the principal departs from the state without leave, "the court, it seems, will order the sureties to pay the money into court within a certain time." *2 Dan. 1712.*

The case of *Collinridge* v. *Mount, Dick. 688,* decided by Lord Thurlow in 1787, when carefully examined, has no bearing upon proceedings in the court of chancery to enforce a *ne exeat* bond.

The case of *Elliott* v. *Elliott* was decided eighteen years ago and has been regarded as settling the law in the court of chanery, distinguishing between a *ne exeat* bond and a bond for maintenance or alimony, making the former enforceable against the sureties in the court of chancery, while the latter is left to be enforced in a court of law in accordance with the practice in the case of an injunction bond. In considering whether the distinction between these two bonds recognized now in the court of chancery is logical or not, regard must be had for Lord Halsbury's *dictum* that "the law is not always logical."

Inasmuch as the order in this case appealed from is based upon controlling precedents, which have been followed in the court of chancery without question for a generation, it does not seem necessary to enter upon an extensive investigation of the historical and logical basis of a rule of practice or procedure by which, until the court of errors and appeals shall determine otherwise, the court of chancery is absolutely bound. Only a few suggestions relating to the equitable fitness of the rule thus established will be made here—suggestions which have occurred to me during the course of years in which I have frequently advised orders of the same kind as the one brought in question.

The slightest reflection will show the radical difference between the object of an injunction bond and the object of a *ne exeat* bond. The injunction bond stands as security for damages, positive injuries to the property rights of the party enjoined, which may be caused by the writ of injunction.

The writ of *ne exeat* is intended to keep the party against whom it goes personally amenable to the orders and process of the court in the suit. There is absolutely nothing in an injunction bond which relates to the disposition of the person of

the party who gives it. The party giving the injunction bond is the party who sues out the writ of injunction, while the party giving the *ne exeat* bond is the party against whom the writ of *ne exeat* is issued. All the authorities hold that the writ of *ne exeat* is "in the nature of equitable bail." *Mitchell* v. *Buch*, *2 Paige 606; 29 Cyc. 384.*

In respect of its object the *ne exeat* bond is, I think, in some aspects more like the recognizance of special bail, "bail above," than the bail bond given to the sheriff, "bail below."

It must be conceded, however, that in one very important particular the surety on a *ne exeat* bond does not stand in the position of bail upon a recognizance. In the latter case the principal is delivered into the custody of his bail and his bail may seize him and surrender him. In the former case the principal is not delivered into the custody of the surety nor has the surety any right to seize him or to surrender him. *In re Wolf, 3 N. Y. Leg. Obs. 383.* The situation in this respect is more like that of the surety upon the bond to the sheriff—bail below. There was an instance a few years ago where in some way a surrender of the principal by the surety on a *ne exeat* bond was effected in the court of chancery, but I am unaware by what course of irregular procedure this thing was accomplished. The *ne exeat* bond simply insures a certain course of conduct by the defendant, the principal on the bond, with reference to the jurisdiction of the court over his person, and if this conduct is not pursued there is a breach and forfeiture, and the principal and surety are alike liable on the bond. In order to assimilate the position of the parties on a *ne exeat* bond to that of bail at common law on a recognizance in respect of liability, the legislature of New York in 1845 passed an act providing for the surrender of the principal on a *ne exeat* bond and prescribing a course of procedure. The act is entitled "An act relating to bail in the court of chancery and for other purposes," and, if I recollect aright, it covers all cases where a party is arrested in any suit or proceeding in the court of chancery.

It has seemed to me that the practice in respect of the enforcement of *ne exeat* bonds now brought in question, may perhaps be rested upon the idea that when a party as surety enters into

this peculiar obligation on a *ne exeat* bond in the court of chancery, he makes himself a party to the suit for all purposes connected with the use to which the bond is put for the purposes of the suit. The surety may be deemed a party to the suit in analogy with the rule which makes the purchaser at a sheriff's sale under process from the court of chancery a party to the suit, for all purposes connected with securing the objects for which the process has been issued and the sale has been made.

I think it is safe to say that the practice which has obtained of enforcing the obligation on a *ne exeat* bond against the surety by order to show cause in the court of chancery, makes for justice and economy in the administration of equity, and particularly in the administration of divorce law. In these divorce and alimony cases the amounts involved are frequently small and the parties interested are poor women. Full justice as far as possible ought to be accorded to them in the court of chancery.

In my opinion, instead of limiting the jurisdiction of the court of chancery in cases like the one at bar, it would be far better by appropriate constitutional legislation to make all sureties who give bonds in any action or proceeding in the court of chancery, or in any other court, parties to the suit or proceeding, so as to give the court in which the bond is given full power to procure its enforcement, not by an original suit in some other court, but by an appropriate proceeding in the cause in which the bond is given. It does not seem to me that there is any objection to this view arising from the fact that the proceeding to enforce the bond may be deemed "summary." An order to show cause in a case like this seems to correspond with a *scire facias* to enforce a recognizance.