5 How. 125–Followed, 7 How. 389, 393; 4 Lans.
184.   Contra, 25 How. 182, 183, 189.

Catharine N. Forrest agt. Edwin Forrest.

## SUPREME COURT.

### Catharine N. Forrest agt. Edwin Forrest.

The writ of *ne exeat* is not abolished by the code, as a provisional remedy. In all essential particulars in its nature and effect and in the cases to which it is applicable, the ne exeat is unlike the arrest provided for in the Code (§ 178). It not being otherwise provided for in the Code, and not abolished by it in express terms, remains a provisional remedy which can not with propriety be denied to suitors when asked for in a proper case.

To authorize the issuing of a ne exeat, *facts* must be set out sufficiently, on which the *court* (or judge) can repose its belief.    Mere fears and apprehensions of the party are insufficient.

Where the plaintiff expressed her fears that from circumstances which had come to her knowledge, the defendant would depart this state; that he would sell his property here and remove his means from this state, and would forcibly abduct her from this state and remove her to Pennsylvania in order to subject her to the jurisdiction of the courts of that state, where it was alleged the defendant had instituted proceedings for a divorce from the plaintiff, on the ground of adultery—*held*, that the mere fears expressed by the plaintiff in the absence of any reasons given, were insufficient to authorize the issuing of a ne exeat.

*New York General Term, November* 1850, *before* Edmonds, *Presiding J.;* Edwards and Mitchell, *Justices.*    The complaint in this suit was filed by the wife to obtain a separation from her husband on the ground of abandonment.

It appeared that the defendant had separated from his wife, allowing her $1500 a year for her support.    That after the separation he had instituted proceedings in Pennsylvania to obtain a divorce from her on the ground of adultery.    By the laws of that state it was necessary that the husband should have been a resident there for one year, and the complaint in this suit alleged that he was not at the commencement of the suit in Pennsylvania, and for a year preceding had not been a resident of that state, and that he pretended to be a resident there and had brought his suit there in order to deprive the plaintiff, who resided in this state, of the means of properly defending herself against the charges made against her.

The complaint also alleged that the defendant was the owner of a large property situated mostly in this state, and it expressed

the fears of the plaintiff, from circumstances which had come to her knowledge, that the defendant would depart this state, that he would sell his property here and remove his means from this state, and would forcibly abduct her from this state and remove her to Pennsylvania in order to subject her to the jurisdiction of the courts of that state.

It therefore prayed an injunction, restraining the defendant from proceeding in his suit in Pennsylvania, on the ground that it was a fraud upon the plaintiff's right to be heard in the courts of this state; for a writ of supplicavit, commanding him not to molest her in her retreat in this state, and for a ne exeat restraining him from departing from the state, so that he might always be amenable to the courts of this state for any violation of the injunction. Those several writs were allowed by a judge at chambers and a motion was made at the special term to discharge the writ of ne exeat, which was granted.

The plaintiff appealed from that order.

C. O'Conor, *for Plaintiff.*

J. Van Buren, *for Defendant.*

Edmonds, *Presiding J.*—The counsel on both sides agreed that the writ of ne exeat is abolished by the Code. I certainly did not so understand the law at the time that I allowed the writ in this case, or I should have hesitated in directing it to issue; for the distinction on which the counsel for the plaintiff now rests his claim to the writ did not then occur to my mind, nor was it then suggested to me.

Until the decision in this case at the special term, it had not occurred to me that the writ had been abolished, but on the other hand, I have several times allowed it since the Code was enacted, supposing it to be one of those provisional remedies which had been saved to suitors by sections 244 and 468.

I confess that the note of the commissioners had not met my eye, and I have acted upon the subject in ignorance of their intention and without the light which I might doubtless have derived from their remarks.

Catherine N. Forrest agt. Edwin Forrest.

And now that my attention is called to those remarks, I can not receive the avowal of their intention in recommending the law as conclusive evidence of the intention of the legislature in passing it, nor as any thing but very imperfect evidence of its real meaning.

It was frequently remarked by the former Court of Errors, by the Chancellor and the former Supreme Court, when the Notes of the Revisers, though happily distinguished by great learning and research, were quoted to them, as evidence of the meaning of the Revised Statutes, that they could not receive them as such, for the legislature might have meant one thing and the revisers another; and that the meaning of the statute was to be gathered rather from its language and the plain import of the words used than from any speculation as to the thoughts or intentions of those who proposed it.

It would doubtless tend to relieve our task of interpreting the Code of much of its burden, if we could be at liberty to refer in all instances to the views of the commissioners in reporting it; and though that might involve in all cases, the enquiry whether the part under consideration had been reported by them or interpolated by the legislature, and might sometimes require us to give a construction quite foreign to the plain import of the language used, yet it would materially lessen both the responsibility and the labor, which seem to be accumulating upon us.

But I know of no principle to authorize us to adopt such a course. The maxim, *a verbis legis, non est recedendum,* is as old as the common law itself, and nothing is better settled than the rule that the intention of the lawgiver is to be deduced from a view of the whole and every part of a statute, taken and compared together, and that the true meaning of a statute is properly to be sought from the body of the act itself. The current of authority is in favor of reading statutes according to the natural and most obvious import of the language per BRONSON, J. 20 *Wend.* 561, and where the words are not explicit, the intention of a statute is to be gathered as well from its context, as from the occasion and necessity of the law, from the mischief felt and the

objects and remedy in view (1 *Kent's Com.* 462). Such I understand to be the sound maxims of interpretation established by the experience and ratified by the approbation of ages, and I have neither the power nor the inclination to wander from them in pursuit of the presumed intention of the propounders of the statute.

Any other rule would substitute the discretion of the judge for the fixed rule of law; would cast every man's rights afloat upon an unexplored sea, and would annihilate that certainty which in law is the mother of repose.

The admission made at the bar, to which I have alluded, and the decision of the Superior Court to which we were referred, both are based upon the idea that the writ of ne exeat has merely the office of the capias ad respondendum at law, and issues only for the purpose of arresting the defendant.

This is a mistaken view of the office and purposes of the writ. Like the writ of supplicavit it is one of the peculiar remedies connected with the exclusive jurisdiction of equity, and it may as well be said that the writ of supplicavit, which is in the nature of the process at common law to find sureties of the peace and is resorted to by the wife against her husband, is abolished because both at law and in equity, the wife has another adequate remedy. It is true it is seldom used, but it is equally true that it has not therefore ceased to exist as a provisional remedy (Codd vs. Codd, 2 *J. R.* 141; 2 *Story Eq. J.* § 1466).

The writ of *ne exeat,* was originally used for political purposes and was founded on the idea, that because every man was bound to defend the king and his realm the king might, as part of the prerogative of the crown, command any man that he should not go beyond seas or out of the realm (*Fitz Nat. Brev.* 85; 2 *Co. Ins.* 54; *Com. Dig. Chancery,* 4 *B*). In the reign of Elizabeth it was applied to civil purposes in aid of the administration of justice (2 *Story Eq. J.* § 1467). In this country it is used, not so much as a prerogative writ, as a writ of right, and in general will not be granted unless in cases of equitable debts or claims, for the reason that on legal claims there is an

Catherine N. Forrest agt: Edwin Forrest.

adequate remedy at law (*Beames Ne Ex.* 30; Seymour vs. Hazard, 1 *J. C. R.* 1).

Such is the general rule, to which there are two exceptions; and one of them is the case of alimony decreed to a wife, which will be enforced by this writ, against the husband, if he is about to quit the realm (Shaftoe vs. Shaftoe, 7 *Ves.* 71; Dawson vs. Dawson, *Id.* 173; 2 *Atk.* 210).

And the question arises whether the writ, in this, one of the excepted cases, is the case of an arrest prohibited by section 178 of the Code, or is one of those provisional remedies which is saved to suitors, from the process of abolition, by sections 244 and 468.

If we look upon the writ merely as a means of enforcing an equitable debt, we may well conclude that it is superseded by the arrest provided for in the Code; but if we look upon it as a prerogative writ to compel a man to remain at home until he has performed his duty to the realm or as a writ in aid of the exclusive jurisdiction of equity, restraining one who designs to avoid the justice and equity of the court by going beyond seas (*Wyatt's Practical Register*, 289), we may well doubt whether it is or ought to be abolished. And we may well imagine that there were members of the legislature learned enough to know its full scope and office and wise enough to wish to retain it, in cases where its abolition could be of no practicable benefit and its continuance of no possible injury.

The writ has been applied to foreigners temporarily in this state, upon the principle that by going beyond the state they might avoid the jurisdiction of our courts and deprive parties resorting to our courts of their right to a remedy in them (Woodward vs. Shatzell, 2 *J. C. R.* 412; Mitchell vs. Bunch, 2 *Paige*, 606).

It has been applied to cases where the party has real and personal property out of the state, which our courts can compel him to assign for the benefit of creditors suing here.

To an accountant of the crown about to leave the realm without having rendered his accounts (Attorney General vs. Mucklow,

17

1 *Price Rep.* 289), and to cases where it clearly appeared that the plaintiff was entitled to a decree for a specific performance (Bochin vs. Wood, *Turn. & Russ.* 332). These, as well as the action of account, are cases in which the writ has other offices than merely the enforcement of the payment of an equitable debt, and they are cases in which the prosecuting party must be often without remedy unless the writ can be resorted to.

A suit for alimony is like to them. In Denton vs. Denton (1 *J. C. R.* 364), upon a petition setting forth that the wife had filed her bill for a divorce, that the defendant had abandoned her and treated her with cruelty; that she had no means of support, and that the defendant was a man of large fortune and threatened to leave the United States, and praying for a ne exeat and a writ of supplicavit to restrain the defendant from molesting her retreat, Chancellor Kent said that the allowance of a ne exeat, where the husband threatens to leave the state, is essential to justice and had been granted in like cases, and he allowed the writ.

Is all this done away with by the Code and these salutary offices of this writ abolished by it?

None of these cases are founded upon the narrow idea, so much dwelt upon, that the suit has as its sole office the requiring of equitable bail for equitable debts, but upon the broader principle that it is necessary to the due exercise of this court's peculiar and exclusive jurisdiction and to prevent a failure of justice.

Are we compelled to declare that this principle is blotted out of our sytem of jurisprudence? Surely not; certainly we can not be required to deny to parties this long accustomed and efficient remedy unless the language of the statute is too plain to be mistaken.

In Mitchell vs. Bunch, *supra*, the chancellor said that if the court had jurisdiction of the cause and the defendant intended to leave the state, so that the decree against him would be ineffectual, the complainant had a right to the writ; and if this be true of equitable debts it must be equally true of all the other cases in which the writ could ordinarily issue.

The Code has no where in express terms abolished the writ of

ne exeat; such abolition is inferrible only from the enactment in section 178, that no person shall be arrested in a civil action except as prescribed in the act, and it becomes important to inquire whether the arrest here spoken of, is one of the same nature and effect with the operation of the writ of ne exeat, so as actually to supersede it, or whether it is not one of those provisional remedies existing at the enactment of the Code not otherwise provided for therein (§244).

One marked difference between an arrest under the Code and a ne exeat is this, that the writ never issued where the person of the defendant could not be touched under the decree either on execution or attachment (Gleason vs. Bisby, 1 *Clarke*, 551; Johnson vs. Glendening, 5 *Gill & John.* 463). The arrest in an action at law has not now and never has had any such limitation.

Another difference is in the nature of the arrest under the Code. By § 187, the defendant is to give bail that he will at all times render himself amenable to the process of the court during the pendency of the action and to such as may be issued to enforce the judgment therein. Upon a ne exeat the bail is merely that he will not go or attempt to go into parts without the state without leave of the court.

In the one case the sheriff is commanded to arrest the defendant and keep him in custody until discharged by law (*Code*, §185). In the other case he is merely commanded to cause the defendant to come before him and give security not to depart the state.

In one case the surety may discharge themselves by surrendering their principal. In the other they can never be discharged except by order of the court.

Again, it is not necessary, though it is usual, that the ne exeat should be by writ; it may be by order enforced by attachment for contempt. Such is the practice in the English Court of Exchequer, where an order is in the first instance granted that the party within a limited time give security that he will not depart the kingdom, and in default that an attachment issue (Attorney General vs. Mucklow, 1 *Price*, 289).

I see nothing in the Code to prevent such a practice, and in case it should be adopted instead of issuing the writ in the first instance, section 178 would clearly warrant an arrest on the attachment as for a contempt.

In an arrest under the Code the bail can be proceeded against for a default only by action (§ 190), but on a ne exeat, in case of a breach of the bond, the court may order the securities to pay the money into court (Musgrave vs. Medex, 1 *Mer.* 49).

In all essential particulars then, the ne exeat is unlike the arrest provided for in the Code. In its nature and effect, and in the cases to which it is applicable it is unlike, and it seems to me that construing this statute by the old and well established rules of interpretation, it is impossible to say that the ne exeat is otherwise provided for in the Code and therefore abolished by it.

The relief sought in this case, of the ne exeat, and the supplicavit, was only that which the Court of Chancery has long been in the habit of granting as appurtenant to its peculiar and exclusive jurisdiction (2 *Story Eq. J.* § 1464), and was precisely that which was sought for and obtained from Chancellor Kent in Denton vs. Denton (1 *J. C. R.* 364), and can not with propriety be denied to suitors when asked for in a proper case.

Having thus arrived at the conclusion that the writ of ne exeat is not abolished as a provisional remedy, it only remains for me to inquire whether a proper case was presented to justify its allowance.

It has ever been the practice of the Court of Chancery to deny it, where the applicant for it had otherwise an adequate remedy at law, as for instance in cases of concurrent jurisdiction where the defendant might be arrested in a suit at law, and it will be clearly proper still to adhere to that rule to refuse the writ where otherwise the defendant may be arrested under the Code, and to allow it only in those cases, where without it there may be a failure of justice and suitors be deprived of their legitimate right to resort to our courts for the redress of wrongs and the prevention of injuries.

So too it has not been usual, at least in the English courts, to

grant the writ in suits for alimony until a decree for alimony has passed, and I confess that if it had not been for the case of Denton vs Denton, and the action of Chancellor Kent, therein, I should for this reason have hesitated and perhaps altogether have refused the writ, but I did not feel myself at liberty to depart from or disregard a rule laid down by that eminent judge, cited with approbation by Judge Story (2 *Eq. J.* § 1472, *n.* 1), and acquiesced in and practiced upon in this state for a period of 35 years.

In determining the question whether this is a proper case in which the writ ought to be allowed, we are necessarily confined entirely to the case as stated on the part of the plaintiff, the defendant having with much propriety, confined himself within the limits necessary to raise the question of law involved in his motion.

Viewed in that aspect, this case is like that of Denton vs. Denton in every essential particular, save one. In that case the defendant had not only put his wife away from him but had abandoned her without home or support, and denied her all support. In this case the defendant has made ample provision for his wife and caused it to be punctually paid to her. No threat of his to withdraw that support has been set up. No avowal of an intention on his part to discontinue it has been alleged, but all rests on the fears of the plaintiff; on her suspicions that he may do so. That he intends to leave the state is sufficiently avowed because he already asserts that his residence is in another state. But there is no reason given for apprehending that he will not return to it from time to time, and be finally within the jurisdiction of this court when its judgment shall be pronounced, and none for believing that he will attempt to remove his large property beyond the jurisdiction of the court, and there is, as I have said, nothing but the fears of the plaintiff that he may do otherwise.

This is not sufficient to warrant the granting of so high a provisional remedy. Facts must be set out on which the court can repose its belief, and those upon which the plaintiff relies and to

which she points as the foundation of her belief, are not enough to work in our minds the same belief which obtains in hers.

For this reason, I think the writ of ne exeat was improvidently issued and the order of the special term discharging it ought to be affirmed.