Bushnell agt. Bushnell.

# SUPREME COURT.

## BUSHNELL agt. BUSHNELL.

Is the writ of *ne exeat* still in operative existence? *Held*, that it must be so considered, in order to accomplish the ends of justice in many cases, where no kind of substitute is given by the Code. It is not abolished by the Code in express terms, and its importance in a court of equity is too manifest to allow the belief that it was intended to be taken away by implication. *(This agrees with Forrest agt. Forrest, 5 How. 125, and 10 Barb. 48; and is adverse to Fuller agt. Emeric, 2 Sand. S. C. R. 626).*

The Code in its practical operation briefly considered.

Where the writ of *ne exeat* was issued and served with the summons in the ordinary manner of issuing and serving an injunction, *held*, sufficient. That is, it is not necessary to *file the complaint first.*

*Brooklyn Special Term, November* 1852. The complaint sets forth that in 1843 the plaintiff was married to the defendant in Queens county; that at the time of her marriage she was in comfortable circumstances, and possessed of a personal estate of the value of $6000, and of real property worth $1500; that soon after the marriage the defendant obtained the possession and control of said property and spent the same; that in 1845 they removed to Brooklyn and kept boarders; that in 1846 they removed to the city of New York, where the plaintiff was compelled to earn her daily support by serving for hire; that in December of that year, the defendant having expressed to her his intention of going to Cincinnati to prosecute the profesion of a dentist, she sold her watch and a few other articles of personal property which she had retained, and applied the proceeds to purchase an outfit and pay the expenses of his journey; that he left New York for Cincinnati with the avowed intention of returning in four months, but in fact he abandoned her and she has never seen him since; that she next heard of him in 1848, when she was informed that he was employed as treasurer of a theatre at Washington in the District of Columbia; that she wrote to him and received from him a few small remittances, but that she has not received any aid or support, nor communication from him since November 1849. She further states that she is now entirely

destitute and in great want, and supports herself from day to day by washing clothes for hire, while the defendant is engaged in a lucrative business and has an income of over five thousand dollars per annum; that he is general agent of Catharine Hayes, a professional vocalist, and that he is about to go to California, as she is informed and believes. The complaint prays for a separation from bed and board, and a suitable support and provision to be furnished her by the defendant, and for a writ of *ne exeat.*

The complaint is accompanied by an affidavit of the plaintiff's attorney, stating that on the 14th or 15th October 1852, he called at the passenger office of the United States Mail Steam-ship Co. in the city of New York, and found among the names of the passengers engaged to sail in the steamer Illinois, on the 20th October, for Aspinwall, " Miss Catharine Hayes and Mr. Bushnell;" that the deponent is informed and believes that said Mr. Bushnell is the defendant; and that he is also informed and believes that said defendant is the general agent and secretary of the said Catharine Hayes.

Upon these papers being filed, a writ of *ne exeat* was issued by the court on the 18th of October. The summons and writ were served on the 20th of October upon the defendant, who gave security in the sum of $5000, and proceeded on his voyage to California.

The defendant now moves to vacate said writ and discharge the surety.

C. P. KIRKLAND, <em>for Defendant.</em>

JOHN J. TOWNSEND, <em>for Plaintiff.</em>

BARCULO, Justice.—Three reasons are urged by the defendant's counsel for granting this motion.

1st. It is contended that there is not sufficient evidence of the defendant's *intention* to depart from the state. The allegations in the complaint, in this respect are made upon information and belief; and such allegations are, as a general rule, insufficient (Etches vs. Lance, 7 *Ves.* 417; Mattocks vs. Tremain, 3 *John. Ch. R.* 75). But this is not a mere case of information and belief. Mr. Townsend in his affidavit swears to facts and cir-

Bushnell agt. Bushnell.

cumstances in relation to the sailing of the steamer, and the defendant's name being in the list of passengers, which fully authorized the inference of his intended departure. It is impossible in many cases to obtain *knowledge* on such subjects; for those who only can give it, are interested in withholding it. That the inference was correctly drawn in the present case, is demonstrated by the fact that the defendant did sail for California on the day it was supposed he would.

2d. It is urged that the writ must be discharged, because it was issued before the suit was commenced. The facts show that the complaint and affidavits were presented to the court; the writ was allowed and the papers were then filed and the writ issued and served, simultaneously with the summons.

Under the former practice, as laid down in the books, it was undoubtedly the rule that the bill must be filed *before* the writ could be issued ( 1 *Hoff. Ch. Pr.* 90). The reason assigned for this in the English courts was, that until the suit was commenced no affidavit could be made, on which an indictment for perjury would lie (Hughes vs. Ryan, 1 *Beatty*, 327).

It is hardly necessary to say that such reasoning is inapplicable to our present system of conducting actions. The filing of a complaint is no longer necessary to the commencement of a suit. Nor was the English doctrine ever adopted in this state that an affidavit could not be made before the bill was filed. On the contrary, it has long been our practice on moving for injunctions, to read affidavits, for and against the motion, before the bill or complaint is filed. To say that before bill filed no affidavit can be made, upon which a prosecution for perjury can be maintained, is to deny the power of verifying the bill itself. The rules of our late Court of Chancery expressly authorized the complainant to annex affidavits to a bill praying for an injunction or *ne exeat* (*Chancery Rules*, 37). The same principle was incorporated in our rule of 1847 (*Rule* 27). This writ was issued and served with the summons in the ordinary manner of issuing and serving an injunction, and I think the proceeding is in that respect entirely regular.

3d. The more important point is, to determine whether the Code has abolished the writ of *ne exeat*. To maintain the affirm-

ative of this proposition, section 178 is relied on. It provides that "no person shall be arrested in a civil action, except as prescribed by this act; but the provision shall not affect the act to abolish imprisonment for debt, and to punish fraudulent debtors, passed April 26th, 1831, or any act amending the same, nor shall it apply to proceedings for cotempt." The next section enumerates the cases in which the defendant may be arrested, as prescribed by the Code; but it does not include a case of the kind now before us. If, therefore, section 178 applies to a *ne exeat*, there is no mode by which a defendant can be kept within the jurisdiction of the court at the suit of his wife, for abandonment or conjugal infidelity. I can not believe that the legislature intended to deprive the courts of this power so indispensable to the administration of equitable jurisprudence. A court of equity without the authority to compel a party to remain within its jurisdiction until its judgment is pronounced, must be utterly powerless in regard to many matters of equitable cognizance. In this case, the defendant having departed for a distant country, a discharge of this writ will be a virtual determination of the cause against a lady who seems to have been very badly treated; for she can have no inducement to involve herself in the expense of a lawsuit, when the court admits at the very outset, that it has no longer the power to enforce its decrees, or do justice to the oppressed. The legislature must speak more explicitly before I shall believe that this arm of the court of equity has been lopped off by the ruthless hand of innovaton; and when that time does come, it may perhaps be worth while to inquire whether such a maimed trunk corresponds with the constitutional description of a "Supreme Court having *general* jurisdiction in law and equity."

The provisions of the Code under the title of "arrest and bail," may be fairly construed to refer to and govern the cases named therein. In other words the Code is substituted for the old mode of arresting defendants in legal actions. But it is worthy of remark that nothing can be found in that act, either in the enumeration of the causes of action in section 167; nor in the provisions relating to arrest and bail, applicable to the case of divorce and many other equitable actions. It was stated by the

learned counsel for the defendant on the argument, that the defendant might be arrested under the Code; and this seemed to be conceded by his antagonist. But I apprehend these gentlemen were both mistaken. The only clause which has the least resemblance to such a case is the 5th subdivision of § 179, which authorizes an arrest when the defendant has removed or disposed of his property or is about to do so, " *with intent to defraud his creditors.*" This, however, has clearly no application, for the reason that the wife can not be deemed a *creditor* who is to be defrauded. It is true that an injunction may issue to restrain a defendant from removing his *property* beyond the jurisdiction of the court; but that does not prevent him from taking passage on board of a steamer and going to foreign parts; or crossing the river from New York to New Jersey; and if his property is all carried with him in his pocket, who is to reach or punish him for the contempt? Considering the facilities for leaving the state, it is obvious that in a case of this kind, all process which gives the defendant any liberty, after it is served, before it requires him to give bail, must fall short of the exigencies and the justice of the case.

In view therefore of the fact, that the Code has not expressly abolished the writ, nor given any thing as a substitute therefor; and deeming the power of awarding such process essential to the exercise of the legitimate powers of a court of equity, and not to be taken away by implication, I am constrained to hold that this court still possesses the authority to retain a suitor by *ne exeat*.

I am not unaware that this conclusion is contrary to the declared intention of the Code makers. They say in their report, " the writ of *ne exeat* or equitable bail, we propose to abolish as *unnecessary* to our system." " I can not," in the language of Justice EDMONDS in Forrest agt. Forrest (5 *How. Pr. R.* 125, *and* 10 *Barb.* 48), "receive the avowal of their intention in recommending the law, as conclusive evidence of the intention of the legislature in passing it, nor as any thing but very imperfect evidence of its real meaning." These same gentlemen informed us that by the aid of their system of special pleading, they could " frame a Code of, legal procedure, *simple* in its construction,

Bushnell agt. Bushnell.

easily *understood*, and efficient for all the purposes of *justice.*" And yet, special pleading has been tried, and in part, at least, abandoned; and we look in vain for the performance of the flattering promises. It is unnecessary to tell any respectable member of the profession that these objects have not been accomplished. The fact is too well known, too universally acknowledged to need repetition. Indeed, if any thing more was designed than to confo und lawyers, perplex judges, increase litigation, and bring the administration of justice into confusion, uncertainty and disrepute, the Code has been as complete a failure as can be found in the annals of legal quackery.

It is proper to state, however, in this connection, a circumstance which is not noticed in the opinion of the court in Forrest agt. Forrest, nor in the adverse opinion of the Superior Court in Fuller agt. Emeric (2 *Sand. S. R.* 626), viz: that it was true, to a certain extent, that the writ of *ne exeat* was rendered unnecessary by the original Code; for that contained a provision for arresting a defendant who is " not a resident of the state, or is about to remove therefrom " (§ 156, *Code* 1848). That clause might have been allowed by the commissioners to be a substitute for the writ, but it was repealed in 1849; and thus the argument that the writ is unnecessary because of a substitute, is annihilated; and by the same rule that we could infer from the declaration of the commissioners, their intention to abolish it, we should also infer from the act of the legislature a design to retain it.

It would seem, indeed, that section 156 was originally the principal foundation for arrest, and that it was specifically designed as a substitute for *equitable* arrests. Its terms were of a general character requiring merely an affidavit of *a sufficient cause of action*, and of the non residence of defendant or his intention to remove from the state; and this last clause is declared not to be applicable to the particular causes of arrest enumerated in section 154. Of this title, the commissioners say in their report, " we have adhered generally to the principle of the existing laws, although in some respects, we have restricted the right of arrest, particularly by requiring in all cases an order of a judge, and *in most cases*, an affidavit that the defendant is not a resi-

dent of the state, or is about to remove therefrom " (*Comm'rs Rep. p.* 161). It is clear that these " most cases " were those covered by section 156 which was changed by the legislature so as to leave no substitute or provision for equitable actions.

The motion must be denied with $10 costs.