Johnston agt. Johnston.

———•♦———

## NEW YORK SUPERIOR COURT.

JOANNA JOHNSTON, appel't agt. ROBERT JOHNSTON, resp't.

The writ of *ne exeat is abolished* by the Code of Procedure.
(*This agrees with the decision of this court in Fuller* agt. *Emeric,* 2 *Sand.,* 626, *and is adverse to the decisions of the supreme court in Forrest* agt. *Forrest,* 5 *How.,* 125, *and* 10 *Barb.,* 46; *Bushnell* agt. *Bushnell,* 7 *How.,* 389, *and* 15 *Barb.,. 399; and Neville* agt. *Neville,* 22 *How.,* 500.)

*General Term, June,* 1863.
*Before Justices* BOSWORTH, MONCRIEF and WHITE.

APPEAL from an order made at special term setting aside a writ of *ne exeat* issued in this action.

ELBRIDGE T. GERRY, *for appellant.*
ROBERT JACKSON, *for respondent.*

By the court, BOSWORTH, Ch. Justice. This is an appeal by the plaintiff from an order made May 8, 1863, in this action, vacating and discharging a writ of *ne exeat* issued herein on the 5th of May, 1863.

The writ was granted *ex parte* on a petition of the plaintiff, which states the pendency of this action; that it is brought by the plaintiff to obtain a limited divorce; that an order was made herein on the 8th of December, 1862, directing the defendant to pay to plaintiff weekly ten dollars as alimony *pendente lite*, which has been regularly and duly paid, and that defendant threatens and is about to remove from this state to Greenwich, in the state of Connecticut.

The writ was set aside by the judge who allowed it. It is conceded that if *Fuller* agt. *Emeric*, (2 *Sand. S. C. R.*, 626,) was correctly decided, the writ was improvidently issued. But it is urged that *Forrest* agt. *Forrest*, (5 *How.*, 125, *and* 10 *Barb.*, 46,) and *Bushnell agt. Bushnell*, (7 *How.*, 389, *and* 15 *Barb.*, 399,) overrule that decision, and that these two cases and *Neville* agt. *Neville*, (22 *How.*, 500,) present such an adverse array of judicial opinions, that *Fuller* agt. *Emeric* should be reconsidered and disapproved.

The opinion in *Fuller* agt. *Emeric* indicates a careful consideration of the question by the learned judge who wrote it; and shows that the Code was designed to abolish this writ, and that the commissioners in their report to the legislature advised that body that such was their design, and that the Code, as they prescribed it was, in their opinion, so drawn as to accomplish that design. (*Id.*, 629.)

The opinion of the learned judge in *Forrest* agt. *Forrest*, (10 *Barb. R.*, 47,) commences with the statement, "that the counsel on both sides agreed that the writ of *ne exeat* was abolished." That learned judge held the opinion, however, that the writ was "one of those provisional remedies which had been saved to suitors by sections 244 and 468" of the Code. (*Id.*, 48.)

That decision was made in October, 1850, and the Code as it then was should be looked at, in considering it.

Section 244 (*Laws of* 1850, *p.* 663) was then in these words, viz : " Until the legislature shall otherwise provide, the court may appoint receivers, and direct the deposit of money or other thing in court, and grant the other provisional remedies now existing, according to the present practice, except as otherwise provided in this act."

By the amendments made in 1851, (*Laws of* 1851, *Appendix* 80, § 244,) that section was amended, and as amended commences with a specification of five cases in which a receiver may be appointed, and then follows this provision, viz : " The court may grant the other provisional remedies now existing, according to the present practice, except as otherwise provided in this act."

In 1852 this section was again amended, and the words above quoted were stricken out. (*Laws of* 1852, *p.* 656, § 244.)

That this amendment was made in consequence of the decision in *Forrest* agt. *Forrest*, (*supra*,) and to effect the abolition of this writ, if not already clearly accomplished, I do not affirm. But the repeal of that clause took away the basis of the opinion of the learned judge in that case; conceding to it the full consideration due to its ability, and the research and learning it demonstrates; still, .by the very reasoning in that opinion, it is clear that the writ is abolished. That opinion concedes that the Code, as first enacted, would have the effect to abolish the writ, but for sections 244 and 468, (*supra*,) and if that be so, then as the part of section 244, above quoted, is abolished, the power to issue the writ is gone. , No one, I think, will pretend that section 468, which will be adverted to presently, standing alone, retains it.

In *Bushnell* agt. *Bushnell*, (15 *Barb.* 399,) the supreme court in the second judicial district, held before three judges of great ability, decided that the writ was not abolished.

That opinion proceeds upon two grounds : First, *ab inconvenienti*, (*id., pp.* 399, 401 ;) second, upon intrinsic evidence, furnished by sections 178, 179, " of an intention of the legislature to leave the law of arrest and imprisonment where it was before the Code was adopted." (*Id.*, 402, 405 *and* 406.)

The first ground of argument is conceded to be unavailable in the face of a legislative enactment, and the argument in relation to the meaning of sections 178 and 179 is the only one to be reviewed.

Section 178 enacts " that no person shall be arrested ·in a civil action, except as prescribed by this act ; but this act shall not affect the act to abolish imprisonment for debt, and to punish fraudulent debtors, passed April 26, 1831, or any act amending the same, nor shall it apply to proceedings for contempt." Section 179 enumerates the cases in which a person may be arrested, provisonally.

Section 178 is the first section of the first chapter of title 7, which title is, " Of the provisional remedies in civil actions." The title is a part of the statute.

We find here an absolute prohibition against the arrest of any party in any civil action, except in the cases and in the manner provided by the act itself.

And this act provides in terms for every civil action, whether formerly an action at law, or a suit in chancery. The preamble of this act declares that it is expedient * * * that an uniform course of proceeding in all cases should be established, and section 69 enacts that there shall be " but one form of action for the enforcement or protection of private rights ᴀnd the redress of private wrongs, which shall be denominated a civil action."

Then follows the prohibition of the arrest of any party in a civil action, except in the cases and manner specified in that act. Every remedy other than a civil action is defined to be a special proceeding, (§§ 2 and 3.) Hence

it is evident that the design of the Code was to regulate every remedy, either by requiring a pursuit of the means it specifically provides, or by a resort to such pre-existing practice as its provisions retain.

The writ in this case was sought and granted as a remedy in this action, and may be held to be unauthorized because prohibited, without interfering with the power of the court of chancery or any court succeeding to its general powers to issue it, where no action is pending and without reference to a civil action existing or contemplated, if such a case for its exercise can occur under our system of government.

The issuing of *ne exeat* in a civil action is merely for the purpose of obtaining equitable bail in such action. (1 *Hop. R.*, 496 ; 2 *Paige R.*, 606 ; 3 *P. W.*, 812, *ex parte Bunker.*) In the case before us it is issued solely to compel the defendant to give equitable bail, and is resorted to as a provisional remedy.

Unless, therefore, authority to issue the writ to arrest 'a party in a civil action is preserved by the concluding clauses of section 178, or some other section of the Code, it is clearly abolished.

No one has contended that it is saved under the exception in regard " to proceedings for *contempts.*" Does the exception as to the act abolishing imprisonment for debt reserve authority to issue it ?

The opinion in *Bushnell* agt. *Bushnell*, (*supra* 402,) affirms that these qualifications of section 178 in connection with section 179, " indicate the clearest intention on the part of the legislature to leave the law of arrest precisely as it stood before the passage of the Code." That "the act to abolish imprisonment for debt and to punish fraudlent debtors, passed April 26, 1831, was framed with a view to preserve it untouched ; for the prohibition in the first section is against the arrest or imprisonment of any person on any civil process issued out of any court of

law, or any execution issuing out of any court of equity." (*Id.*, 405.)

The qualification of section 178, by declaring that it should not affect the act to abolish imprisonment for debt, was designed to leave creditors at liberty to pursue the remedies prescribed by that act to reach a fraudulent debtor's property, and to arrest him as a part of such remedies in the cases allowed by that act, although such cases and modes of arrest might not fall within the enumeration contained in section 179. But it was not designed to allow a person, not proceeded against under that act, to be arrested in a civil action, except as the Code authorizes it to be done. The very marked difference between section 1 of the non-imprisonment act and section 178 of the Code, is quite conclusive to my mind against the inferences claimed in *Bushnell* agt. *Bushnell*. In the former, prohibition in equity suits is only against arrests on execution; in the Code, it is against arrests in every equity suit and every action at law, either as a provisional remedy or an execution, except to punish for contempt and in proceedings had under and according to the non-imprisonment act.

It was because the non-imprisonment act only prohibited arrests on executions in equity suits that the chancellor, in *Brown* agt. *Haff*, held the writ was not abolished. (5 *Paige R.*, 235.) In view of the specific and restricted terms of that prohibition, the chancellor said : " The legislature therefore have not thought it expedient to deprive this court of the power of requiring this kind of bail in cases which are clearly of equitable cognizance, where the defendant is about to elude the justice of the court by removing beyond its jurisdiction." But he added, that " in cases of mere legal cognizance, in which the court would not have granted a *ne exeat* previous to the act of April, 1831, this court will not extend its jurisdiction for the purpose of giving to a complainant the

benefit of equitable bail, although the defendant is about to remove from the state."

Such being the practice under the act of 1831, a practice clearly not prohibited by it, the legislature, on enacting the Code and prescribing the future practice of the courts, where every court was to be a court of chancery as well as of law, and every judge a chancellor, and providing as well for equity suits as for actions at law; in short, for every civil action; prohibited absolutely the arrest of any person, either as a provisional remedy or on final process, except in the cases and in the manner provided for by the Code itself.

The arrests authorized by sections 178 and 179 are allowed as provisional remedies.

Sections 286 and 288 provide for arrests on final process, and section 292 (sub. 4) for an arrest after issuing an execution against property and prior to its return.

It is said in *Bushnell* agt. *Bushnell*, (*supra*, 405,) that " section 178 declares that its provisions shall not affect the right to arrest upon proceedings for contempts, nor in those cases where the power is given in the act to abolish imprisonment for debt. And the five several subdivisions of section 179 enumerate all the other cases in which a defendant might have been arrested under the old law."

The non-imprisonment act does not provide for arresting and holding a party to bail as a provisional remedy in any case. It authorizes the arrest of a party against whom a suit was commenced or a judgment had been obtained " in any suit or proceeding instituted for the recovery of money due upon any judgment or decree founded upon contract, or due upon any contract, express or implied, or for the recovery of any damages for the non-performance of any contract," (§ 1,) in proceedings had in conformity with sections 3, 4 and 5 of that act. If he failed to controvert the facts alleged against him, or if

they were established, though controverted, he was to be committed (§ 10) and remain in custody in the same manner as other persons on criminal process, (§ 11,) until final judgment in his favor, unless he prevented a commitment by complying with section 10, or, if committed, obtained his discharge as provided by that act. Section 178, by declaring that it should not apply to that act, designed to save to creditors the right to pursue the remedies given by it, but not to enlarge the class of cases in which legal or equitable bail might be compelled, in a civil action, as a provisional remedy.

If it be meant that section 179 only enumerated cases in which a party could be held to bail, prior to the act of 1831, it may be answered, that the matters specified in subdivision 5 were not grounds for holding to bail, where the action itself did not confer that right.

Section 179 authorizes the arrest of a party, and compelling him to give bail to the action in a variety of cases where the act of 1831 prohibits it, namely in all the cases enumerated in section 1 of that act, and not contained within the exceptions specified in its second section.

Having provided for compelling bail in actions prohibited by the act of 1831, but designing to leave to the creditor the remedies provided by it, section 178 enacts that its first clause shall not apply to that act, and it so enacts to forbid its repeal being urged as having been effected by necessary implication.

It follows, therefore, that section 178, by enacting that "no person shall be arrested in a civil action, except as prescribed in this act," exempts every person from arrest in a civil action, either as a provisional remedy or on final process, except in the cases and in the manner prescribed by the act. This is a civil action, as defined by sections 1, 2, 3, 4, 5, 6 and 69 of the Code; the defendant has been arrested in it, in a manner and for a cause not enumerated in the Code. It is only by arguing that

Johnston agt. Johnston.

the legislature could not have intended that which the language of the Code clearly expresses, that the conclusion that the power to arrest a party on a *ne exeat* in a civil action had been abolished, can be avoided.

The opinion in *Neville* agt. *Neville*, (22 *How. R.*, 500,) as that of an able jurist, deserves the highest consideration. It devotes, however, but a few lines to the consideration of the question before us, and is based mainly on *Bushnell* agt. *Bushnell, (supra.)* That the writ is not abolished, is not involved in the judgment pronounced, because he discharged the writ.

Section 468 of the Code, the only one except 244, relied upon in *Forrest* agt. *Forrest (supra)* as retaining the writ of *ne exeat* as a provisional remedy, has not been changed since its enactment. It is in these words, viz: § 468. " All statutory provisions inconsistent with this act are repealed ; but this repeal shall not revive ·a statute or law which had been repealed or abolished by the provisions hereby repealed. All rights of action given or secured by existing laws may be prosecuted in the manner provided by this act. If a case shall arise in which an action for the enforcement of a right, or the redress or prevention of a wrong cannot be had under this act, the practice heretofore in use may be adopted as far as may be necessary to prevent a failure of justice."

The first sentence of this section to the case on hand. If the second sentence can be supposed to have, it is against the power to issue the writ. The right of action which is the foundation of this suit was given by laws existing when the Code was enacted ; and the provisions of the Code applied to it, in respect to the general mode of prosecuting it. Being such an action, it is not within the last sentence of the section. That is a saving clause to cover any imagined case, not present to the mind of the commissioners, which might possibly occur, in which the forms of proceedings enacted by the Code could not

be applied, so as to prevent a failure of justice, without resorting in some degree to the pre-existing practice.

But the arrest of a party in every civil action, no matter what it may be, whether before judgment as a provisional remedy, or after judgment to enforce it, is the subject of express and precise legislation. That is explicit, that in no civil action, whether one heretofore cognizable solely by a court of equity or a court of law, shall any person be arrested before or after judgment except as the Code prescribes, save in proceedings under and according to the non-imprisonment act, or in cases of contempt. I do not therefore see any sufficient reason for overruling *Fuller* agt. *Emeric*, (*supra*,) or questioning its accuracy.

The order appealed from should be affirmed. Ordered accordingly.