Johnson, J.
The only question made in this case is, whether there was jurisdiction to issue the writ of ne exeat, and require the defendants, John.and Sarah Beck, to give bail to obtain their discharge. From the record before us, it would seem that the injunction -was allowed, and the writ of ne exeat issued on the order of the judge, at chambers, and not by the court; but as counsel have argued the case as if it was upon orders of the court, we will consider the question in that aspect.
The writ in question appears to have been granted upon *660 the petition, and without other affidavit than the verification to the petition, and without requiring the plaintiff to give bond, as in cases of arrest and bail, as required by the civil code. It was based on an allegation that defendants were about to leave the state; that they had no property in the state, save household goods, which were ready to be shipped out of the state ; that they were insolvent, and if they left the state the plaintiff'would be without remedy.
The relief sought was a specific performance of the contract for the land, and for a money judgment on the indebtedness.
The Common Pleas gave judgment as prayed for, that the land should be conveyed, and, in default, that the decree should operate as such conveyance, and also for the four-hundred-dollar debt.
This action was then brought on the bond, and the breach alleged is that John and Sarah Beck failed to perform that decree.
It is conceded that since the adoption of the code of civil procedure, and the passage of the act of March 14, 1858, “ to amend an act relating to the organization of courts of justice, and their powers and duties” (1 S. & C. 382), both of which took effect July 1, 1853, there is no power in the court to issue a writ of ne exeat, unless it can be derived from section 603 of that code, which reads:
“ Rights of civil action, given' or secured by existing laws, shall be prosecuted in the manner provided by this code, except as provided in section 604. If a case ever arise, 'in which an action for the enforcement and protection of a right, or the redress or prevention of a, wrong, can not be had under this code, the practice heretofore in use may be adopted, as far as may be necessary to prevent a failure of justice.”
The 36th section of “ an act directing the mode of proceeding in chancery,” passed March 14, 1831 (Swan Stat. 1840, p. 710), authorized the Supreme Court, or any judge thereof, and the Court of Common Pleas, or any president judge thereof, “ to grant writs of ne exeat to prevent the departure of any defendant out of this state, until security *661 is given to perform the decree.” This could he done in ■term-time or in vacation upon petition filed, with an affidavit annexed of the truth of the allegations.
This act was repealed by section 606 of the code (2 S. ■& C. 1133), and is no longer in force, unless saved by the provisions of section 603, above quoted.
It is claimed in argument that the case in wíxich the writ was issued was “ an action for the enforcement and protection of a right,” and “ the redress and prevention of a wrong ” that “ could not be had under the code,” and therefore, to prevent “ a failure of justice,” the practice “ heretofore in use;” that is, this act of 1831, might be adopted.
It is urged that this provision of section 603 is in the nature of a saving clause to the repeal of the old chancery practice, and that the original action of plaintiff was one •coming within it.
The writ of ne exeat, as it was known and used in Ohio, prior to the code, was a process in chancery, and occupied the same relation-to the suit in chancery as the capias respondendum did to an action at law.
The constitution of 1802, art. 3, sec. 3, gave the Court of Common Pleas “ common-law and chancery jurisdiction in all such cases as shall be directed by law.”
By the act of February 7, 1831, to organize the judicial courts (Swan Stat. 1840, p. 222), the Court of Common Pleas “ shall have original jurisdiction in all civil cases, both at law and in equity, where the sum or matter in dispute exceeds the jurisdiction of a justice of the peace ; . . and shall have the same power to issue remedial and other process (writs of error and mandamus excepted) as the Supreme Court has.”
By the same act (sec. 3) it is provided “ that the Supreme Court shall have powex’, oxi good cause shown, to issue writs of habeas corpus, cum causa, certiorari, mandamus, prohibition, procedendo, error supersedeas, habeas corpus ne exeat, and .all other writs not otherwise specially provided for by statute, which may be neeessai’y to enforce the due administration of right and justice throxxghout the state, and for the *662 exercise of its jurisdiction agreeably to the usages and principles of law.”
This act remained in force until after the constitution of 1851 was adopted. By art. 9, sec. 4, of that instrument,. “ The jurisdiction of the Courts of Common Pleas, and the judges thereof, shall be fixed by law,” and by the schedule (sec. 1), “ all laws of this state in force on the first .day of September, one thousand eight hundred and fifty-one, not inconsistent with this constitution, shall continue-in force until amended or repealed.”
By “ an act relating to the organization of courts of justice, and their powers and dutiés,” passed February 19y 1852 (3 Curwen, 1701), sec. 15, “the Court-of Common Pleas shall have original jurisdiction in all civil cases, in law and equity, when the sum of matter in dispute exceeds the jurisdiction of justices of the peace; . . and; shall have the same power to issue remedial and other process, writs of error, quo warranto, and mandamus, as the-District Court has.” By sec. 13 of the same act, “ The-District Court, in addition to the original jurisdiction conferred by art. 4, sec. 6, of the constitution, shall have power,, on good cause shown, to issue writs of error, certiorari, supersedeas, ne exeat, and all other writs not specially provided for by statute, whenever such writs may be necessary for the exercise of its jurisdiction in the due administration of justice throughout the state.”
Sections 13 and 15 were repealed by the amendatory act,, passed March 14, 1853 (1 S. & C. 382). By section 2 of this act, which took the place of section 13, “ the District Court . . shall have power on good cause shown to issue writs-of error and certiorari in criminal cases, and all other writs, not specially provided for, nor prohibited by statute, whenever they may be necessary for the exercise of its jurisdiction; in the due administration of justice ;” and by section 5 of that act (3 Curwen, 2250), “ the Common Pleas shall have-the same power to issue remedial and other process {quowarranto and mandamus excepted) as the District Court, has.”
*663 In the legislation prior to this act of 1853, which took effect the same date as the code (July 1,1853), ne exeat was specially named as one of the writs which the court could issue, hut it was omitted in the act of 1853. "Why was this ? By keeping in the mind the fact that the same legislature which passed the act of 1853 also adopted the code, the force of this omission is apparent.
The code of civil procedure was intended to provide a general mode of proceeding applicable to all civil actions both at law and in equity, unless excepted in its provisions. The commissioners who submitted that code to the legislature, on page 84 of their report, in explaining the chapter on “ arrest and bail,” say that the spirit of our modern legislation is against imprisonment for debt, and add: “ This chapter supplants, it may be said, the old capias respondendum, and the writ ne exeat.”
Looking at this legislation,it is manifest it was the intention of the legislature to abolish this writ, and restrict the power of arrest in all actions at law and in equity to civil actions, “ for the recovery of money, where it comes within the provisions of the code.” (Code of Civil Procedure, title 8, chap. 1.)
This view is strongly supported by the fact that all the prior acts conferring power on the Courts of Common Pleas specially name the writ of ne exeat as one of the-remedial writs the courts may issue, while in the act of 1853 it is omitted, and additional force is given to this view when we look to the act of April 29, 1854 (1 S. & C. 386), to amend section 5 of the act of 1853. By this amendatory section, the clause in that section which provides that “ the Common Pleas shall have the same power to issue remedial and other process (quo warranto and mandamus excepted) as the Distinct Court has,” is omitted, leaving the granted jurisdiction to stand as to “ all civil cases where the sum or matter in dispute exceeds the jurisdiction of justices of the peace.”
This omitted clause in section 5 of the act of 1853 left the power of the court as to remedial process to depend on *664 section 6 of the act of 1858 (1 S. & 0. 383). It reads as follows : “All process and remedies authorized by the laws of this state, when the present constitution took effect, not hereinbefore provided for, may be had and resorted to in the courts of the proper jurisdiction under the present constitution, and all the laws regulating the practice of and imposing duties on, or granting powers to the Supreme Court, or any judge thereof, and the Courts of Common Pleas, or any judge thereof, respectively, under the former constitution, in regard to matters not hereinbefore provided for, except as to matters of probate jurisdiction, in force when the present constitution took effect, shall govern the practice of and impose like duties on the District Courts and Courts of Common Pleas and the judges thereof respectively, created by the present constitution, so far as such process, remedies, and laws shall be applicable to said courts respectively and the judges thereof, and not inconsistent with the act entitled ‘ an act to establish a code of civil procedure,’ nor with the laws passed, since the present constitution took effect, and which laws are still in force.”
A majority of the court are of the opinion that this section is not broad enough to embrace a ne exeat, which, by the same amendatory act, was omitted, in view of the provisions of the code, and the express l’epeal of the chancery practice act by the code.
This view is made clear by an examination of the nature and office of the ne exeat as a process in chancery prior to the code.
In Rhodes v. Cousins, 6 Randolph (Va.) 191, it is.said: The ne exeat, as now understood and practiced upon, is a proceeding in equity to obtain bail in a case where there is a debt due in equity, though not at law, except in cases of account and perhaps a few other cases of concurrent jurisdiction. The general rule is, that where you can get bail at law, equity will not grant the writ.
“ In the exercise of this power, courts of equity will be very cautious, as it is a strong step, tending to abridge the liberty of the citizen.
*665 “ To induce that court to issue a ne exeat, it must appear : 1. That there is a precise amount of debt positively due. 2. That it is an equitable demand, upon which the plaintiff can not sue at law, except as before, on account and some other cases of concurrent jurisdiction. 8. That the defendant is about quitting the country to avoid payment.”
Lord Eldon says: “ The affidavit to authorize the writ must be as positive as to the equitable debt as an affidavit -of a legal debt to hold to bail.” Jackson v. Petrie, 10 Vesey, 163.
Blaydes v. Calvert, 2 Jacobs & Walk. 211, was a bill to ■enforce an agreement to give a bill of exchange to secure the debt of a third person, and prayed for a ne exeat regno.
Lord Eldon says: “ After looking into the books, my present opinion is that the party can not be held to equitable bail; in other words, I do not find authority to warrant granting the writ in such a ease as this.” The reason was it was not a money demand.
Cowdin v. Cram, 3 Edw. Ch. 232, was a demand for a ne exeat. It is there said that whenever, in a bill for specific performance, the writ is allowed, it has. been against the vendee, where there is a money demand which is sought to be enforced.
In such eases, if the vendor can give a good title, he may have the writ, provided the defendant is about to leave the jurisdiction; “ because there is an equitable money demand or indebtedness, the amount of which governs the court in ■making the writ for bail.”
This was a process unknown to the ancient common law, which, in the freedom of its spirit, allowed every man to -depart the realm at his pleasure.
Prom an early period it was used as an auxiliary jurisdiction of courts of equity, and at one time it issued at the instance of the king as a prerogative writ. As a writ of right in cases of private rights, Judge Story says: “In general, it will not be granted unless in cases of equitable debts; for, in regard to civil rights, it is treated as in the nature of equitable bail.” 2 Story Eq. Juris., sec. 1470. *666 Only two exceptions are recognized; one is the case of alimony decreed to the wife, which will be enforced against the husband by ne exeat, and in cases of account, on which: a balance is admitted by defendant, but a larger claim is insisted on by the creditor. 2 Story Eq., sec. 1470. In. Adams on Eq. 360, the same limitations are used in describing this writ. It is said : “ It is granted wherever a present equitable debt is owing, which, if due at law, would warrant an arrest, and also to enforce arrears of alimony in aid of the spiritual court in respect of the inability of that court to require bail.”
In Brown v. Haff, 5 Page, 239, the chancellor says, “that to entitle the complainant to a writ of ne exeat, he must show a demand actually due at the time the writ issued.”
So the writ was refused in Cock v. Ravie, 6 Vesey, 283, “ upon an undertaking for an indemnity; to obtain it there-must be an equitable demand in the nature of a debt actually due.” Lord 'Eldon asks : “ Has it not always been a money demand ?”
In Gilbert v. Colt, 1 Hopkins Ch. 500, it is said by the-court: “According to the adjudged cases, a positive affidavit of an existing debt is required as a foundation for the writ of ne exeat-, and this rule has been observed with great strictness.” De Carrier v. De Callone, 4 Vesey, 577, and notes; Dawson v. Dawson, 7 Vesey, 173.
It is never issued to enforce specific performance of an agreement, except where there is a money demand to be enforced in equity. Raynes v. Wyse, 2 Merivale, 473; Blaydes v. Calvert, 2 Jac. & Walk. 218; nor to compel the defendant to abide the event of an action. Gardner’s case, 15 Vesey, 445.
It is a writ to obtain equitable bail, Mitchel v. Bunch, 2 Page, 617; Smedbarge v. Mark’s Ex’r, 6 John. Ch. 138; Dick v. Swinton, 1 Vesey & Bearnes, 372; Stewart v. Graham, 19 Ves. 312; Goodman v. Sayers, 5 Mad. Ch. 471; Grant v. Grant, 3 Russell, Ch. 598; Cox v. Scott, 5 Harris & John. 398; Shearman v. Shearman, 3 Brown Ch. 370.
It is said by Story, that there are two, and only two, ex *667 ceptions to the rule that there must be an equitable money demand, and the affidavit must be as certain as for a capias ,- they are in cases of alimony, and the action in equity for an account, when that court has concurrent jurisdiction. Both of these exceptions are mouey demands, however.
Denton v. Denton, 1 John. Ch. 364, is an instance in alimony, and Forrest v. Forrest, 10 Barb. 46, is another.
Russell v. Ashby, 5 Vesey, 96, is an instance of an equitable action for an account.
In the light of these authorities, as to the office of the-writ ne exeat under the former chancery practice, showing-that it was to a court of equity what a capias for the body was in legal actions — a process to hold the custody of the-body, until he should give bail to abide the decree of the-court — we are prepared to appreciate the force of section 145 of the codev It provides, that “ A defendant in a civil' action, can be arrested before and after judgment, in the-manner prescribed by this code, and not otherwise; but this, provision does not apply to proceedings for contempt; nor does it apply to actions or judgments prosecuted in file-name of the State of Ohio, to recover fines or penalties for crimes, misdemeanors, or offenses.” The writ of arrest under this section may issue in any civil action, legal or equitable, when there is an affidavit “stating the nature of the-plaintiff’s claim; that it is just, and the amount thereof, as-nearly as may be, and establishing one or more of the ” grounds for arrest specified in section 146. This language-is broad enough to embrace equitable money demands.
Under the analogous section, authorizing attachment in a civil action, it has been held “ that the code has extended the remedy, not only by embracing legal cases, in which the remedy had not before been allowed, but also equitable actions brought to recover money, and actions for the recovery-of money only.” Per Gholson, J., Goble v. Howard, 12 Ohio St. 167.
It thus appears that a remedy under the safeguards provided in the code, the affidavit, and the plaintiff’s undertaking, to pay the defendant all damages which he may *668 sustain by reason of the arrest, if the order be wrongfully •obtained, has been provided by the code, applicable to all ■equitable money demands. Hence the 603d section of the code has no application.
By that section, “ if a case ever arise, in which an action for the enforcement and protection of a right . . . can not be had under the code, the former practice heretofore in use may be adopted, so far as may be necessary to prevent a failure of justice.” It was not the intention of the code to •create new causes of action, but to provide a mode of procedure to “ all rights of civil action, given or secured by existing laws,” (except as excepted in section 604).
The writ ne exeat, was a remedial process in chancery, not .an “ action for the enforcement and protection of a(right.”
Neither is it saved by section 6 of the act of 1853. That ■only saves “ process and remedies ” not inconsistent with the constitution of 1851, nor laws passed since its adoption, nor with the provisions of the code of civil procedure.
We conclude, therefore, that the code provides as full .and ample remedy for all cases in equity wherein formerly this writ was allowable (in some respects broader than the ■old remedy), under the safeguards with which the liberty of the citizen should always be surrounded.
We have examined a number of decisions of the Supreme and Superior Courts of New York, cited by counsel. In some of these, it is held that under a similar provision in the New York code (section 468), the ne exeat is not abolished. See Forrest v. Forrest, 5 How. 125; Bushnell v. Bushnell, 7 How. 393; while other cases hold that it was abolished, Johnson v. Johnson, 16 Abb. 43.
These New York cases cited are cases of alimony. As •our code, section 604, excepts from its operation proceedings relating to alimony, the cases are not analogous. Whether this writ was ever applied in Ohio to cases of alimony, and if so, whether the power to issue it in such cases still exists, we are not called on to determine.
The action in this case was for both legal and equitable relief. As to the legal demand, it is not claimed but that *669 the plaintiff had ample remedy under the code to prevent the departure of the defendants from the state until they had given bail.
As to the equitable demand, which was to compel a vendor to convey the title to lands, we have shown, that under' the former practice the plaintiff' had no right to such a writ, and hence it is not saved by section 603 of the code, nor by the 6th section of the act of 1853, before cited. We hold, therefore, that as to all civil actions covered by the provisions of the code of civil procedure, the writ ne exeat' is abolished in Ohio.
This conclusion comports with the spirit of our constitution and laws relating to imprisonment for debt,"and the ancient maxims of the law, that process which abridges the-liberty of the citizen "should be resorted to with great caution.
Day, Wright, and Ashburn, .TJ., concurred; Scott, O. J., dissented.