ANNIE WANDELL *vs.* JAME WANDELL.

JANUARY 28, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, and Condon, JJ.

CONDON, J. This is an appeal from a decree of the Superior Court discharging a writ of *ne exeat* against the

respondent. Said decree was entered on the motion of one of the sureties on the respondent's bond. This motion was filed by the surety after the respondent had been committed to jail for failure to perform the final decree in which the respondent was ordered to pay alimony in the sum of $5 a week to the petitioner for the support of a minor child. The petitioner contends that the surety is not a proper party to move for the discharge of the writ unless he can show that the writ has fulfilled its purpose. She insists that the writ has not fulfilled its purpose in this instance.

On March 2, 1934, the respondent was adjudged in contempt for failure to comply with the decree of the Superior Court ordering him to pay the alimony for the support of his child, and a body attachment was issued against him. He was arrested and committed to jail. On March 17, 1934, he purged himself of contempt and, upon written motion of the petitioner in the divorce action, the court issued a writ of *ne exeat* requiring the respondent to give bail with surety in the sum of $500. Bail was given by the respondent with Raymond Janusayewski and Jakubas Russas as sureties. On September 28, 1934, respondent was again adjudged in contempt and, not having purged himself, was committed to jail on December 4, 1934. While the respondent was in custody pursuant to the decree of the court adjudging him in contempt, the surety, Janusayewski, moved in the Superior Court for the discharge of the writ of *ne exeat,* and the motion was granted. Later, on December 8, 1934, respondent again purged himself from contempt and was released from custody by order of the Superior Court.

The office of the writ of *ne exeat* is fundamentally the keeping of the respondent within the jurisdiction of the court so that he may be within reach of the order of the court. No excursion into the history of the writ is necessary to convince us that, on the facts above set out, the writ had thoroughly fulfilled its office when the respondent

was apprehended and committed to jail on December 4, 1934. The respondent was then within the jurisdiction of the court and could only be released on such conditions as the court deemed necessary. Very properly the surety under these circumstances applied to the court to be released from his obligation as bail for the respondent and quite properly also the justice of the Superior Court granted the motion because the respondent was then within the jurisdiction of the court and amenable to its orders. If the petitioner deemed it necessary, she could have moved for another writ of *ne exeat* as a condition precedent to the release of the respondent on December 8, 1934.

The petitioner's counsel admits that the mandate of the writ specifically commands the sheriff only to cause the respondent to come before him and give sufficient security that he will not go without the State without leave of court, yet he contends that the writ has not fulfilled its purpose in the instant case because the respondent had not made payments of alimony as ordered by the court. The office of the writ of *ne exeat* is not to enforce such payments. That object is attained by the arrest of the respondent on a body attachment and his committal to jail until he evinces a willingness to comply with the order of the court. The office of the *ne exeat* is to assure the presence of the respondent within the jurisdiction of the court when and if it becomes necessary to proceed against the respondent in this manner. It did become necessary to do that very thing on December 4, 1934, and the respondent was found in the State, duly arrested and committed to jail. Under such circumstances the Superior Court had the power to discharge the writ of *ne exeat* at the instance of the surety on the bail at least while the respondent continued in custody.

The decision of the trial justice in the instant case is not inconsistent with the principles of the law governing this writ as discussed in the Rhode Island cases cited on the

petitioner's brief. *Hazard* v. *Durant,* 11 R. I. 195; *Griswold, Petitioner,* 13 R. I. 125; *Robinson* v. *Robinson,* 21 R. I. 81; *Jastram* v. *McAuslan,* 29 R. I. 471; *Levine* v. *Levine,* 44 R. I. 61. In none of these cases was this precise question raised, but in considering the scope and purpose of the writ there is no expression of the court which would lead to a conclusion in the instant case contrary to the one we now hold.

Whatever may have been the reason that gave rise to the writ of *ne exeat* in England, we do not feel those reasons are of any consequence here. When this writ is invoked in a proceeding of the character of the one now before us, the nature and effect of the writ will be viewed in the light of present-day conditions.

The appeal is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

Moss, J., dissenting. It seems to me that for a clear understanding of the question involved in this case a fuller statement of the history of the case is desirable. It was begun August 11, 1925, by a petition filed by a wife against her husband for divorce, custody of a minor child and support of wife and child. It appears that the citation could not be served on the husband within the State and that service was made outside. On September 24, 1925, no appearance having been entered by the respondent, the petition was heard and a decision was given for the petitioner for divorce and custody of the child. On June 25, 1926, a final decree of divorce was entered awarding to the petitioner the custody of the child.

On November 29, 1933, a petition was filed by the wife that the decree be modified so that the respondent would be ordered to pay to her alimony and also a sum certain weekly for the support of their minor child. This stated that the respondent was then within the jurisdiction of the court. A citation was issued and served on the respondent personally December 2, 1933. On December 8, 1933, the

petition was heard and granted and a decree was entered, which ordered the respondent to pay the petitioner $5 per week as alimony for the support of the petitioner and the child.

On February 20, 1934, the petitioner filed a motion that the respondent be adjudged in contempt of court, because he had only paid her $20, being in arrears for $35. On March 2, 1934, a decree was entered adjudging the respondent in contempt. A body attachment was issued and on March 14, 1934, a decree was entered that he be committed to jail and might purge himself of contempt by complying with the decree of December 8, 1933, and payment of all costs. On March 17, 1934, he purged himself of contempt, evidently by paying the alimony in arrears and all costs, and was released from custody under the body attachment.

On the same day the petitioner filed a petition for a writ of *ne exeat* against the respondent and an order was entered that the writ issue and bail was fixed at $500. On the same day, also, the writ was issued accordingly, the respondent was arrested under it, Raymond Janusayewski and Jakubas Russas signed it as sureties for him and he was then released. This writ recited the representations of the petitioner, including one that, if the respondent were not prevented from leaving the State, the petitioner would be unable to enforce compliance with the decree for payment of alimony. It commanded the sheriffs to cause the respondent "to give sufficient bail or security in the sum of $500.00 that he, said Jame Wandell, will not go, or attempt to go into parts beyond this State, without the leave of our said Court."

On June 5, 1934, the petitioner filed a motion that the respondent be adjudged in contempt because he had paid nothing under the decree for alimony since March 24, 1934, so that $50 was overdue up to May 26, 1934. A citation was issued, returnable June 8, 1934, but was never returned; and no further proceedings on the motion are shown. On September 15, 1934, the petitioner filed a third

motion that the respondent be adjudged in contempt for nonpayment of alimony, the amount then in arrears being stated as $90. On September 28 a decree was entered, finding him to be in contempt for nonpayment of $95 in arrears and providing that he might purge himself by paying the petitioner $50 on or before October 12, 1934, and thereafter $2 per week on the balance in arrears in addition to the regular payment of $5 per week.

On November 30, 1934, the petitioner filed a petition asking for the issuance of a body attachment against the respondent for contempt of court because he had paid only $45 on alimony since the decree of September 28, whereas under that decree he should have paid $99. A body attachment was issued and the respondent was brought before the court on December 3, 1934. On December 4, as of December 3, a decree was entered that he be committed to jail until further order of the court, but might purge himself of contempt by paying $100, the amount of alimony in arrears, and paying $5 for costs.

On December 6, 1934, according to the file-mark, a typewritten petition was filed by Janusayewski, one of the sureties as bail for the respondent on the *ne exeat* writ, reciting that the respondent was in jail for contempt in failing to perform the "final decree" in the case, and asking that the writ be discharged. Among the papers in the case there is also a handwritten motion, by the same person as "surety on the *ne exeat* bond", that he be discharged as such surety "on the ground that the purpose of said bond has been accomplished." This motion is not dated or file-marked. On December 6, "as of December 5, 1934," a decree was entered that the writ of *ne exeat* be discharged. This was entered after hearing *but without any evidence being presented*. The present appeal was taken by the petitioner on December 7, 1934. The next day the respondent filed a motion, reciting his committal to jail under the decree of December 3, 1934, and his payment of the sum of $100 and costs, and asking that he be purged

of contempt and released from confinement. The same day a decree was entered finding that he had made these payments, declaring him purged of contempt and ordering him released. He was released accordingly.

It is clear to me, from the record and papers in the case and the briefs and arguments of counsel, that the only ground upon which the surety based his motion that he be discharged as such, or that the writ of *ne exeat* be discharged, was that the purpose of the writ, or rather of the obligation assumed by the sureties by signing the writ as bail for the respondent, was completely fulfilled, because the respondent was then in custody under a body attachment which, the surety asserts, was issued to enforce performance of the "final decree". This is the only ground upon which the surety's counsel have relied in their brief and argument before us in favor of affirming the decree of the Superior Court discharging the writ.

I cannot see how any other ground could have been brought before the Superior Court except this ground, which appeared in the record, since no other ground appeared in the record, no affidavit was filed with the motion and no evidence was presented. The authorities indicate that any other ground for discharging or vacating such a writ must be presented in a motion by the respondent himself. 19 R. C. L. 1353, "Ne Exeat", § 19. 45 C. J. 601, 602, "Ne Exeat", §§ 42, 44, 47. In § 42 of the latter citation is the following statement: "Although the writ may be vacated on a sufficient showing of proper grounds, unless so provided by its terms the writ is not discharged by the entry of judgment, but continues until security is given or the judgment is satisfied." The security referred to is obviously security for the satisfaction of the final judgment or decree in the cause, or possibly, as stated in *Griswold* v. *Hazard,* 141 U. S. 260, "bond, with surety, that he would be amenable to the orders and process of the court."

In § 44 is this statement: "The writ may be vacated upon a proper showing that facts have arisen since its

issuance, obviating its continuance." In § 47 is this statement: "Defendant may apply for a discharge of the writ before answering or at any stage of the action, even before he is arrested, or before the expiration of time allowed for exceptions to his answer, provided the time is reasonable under the circumstances. But if he is in custody for contempt, he will not be heard on an application to vacate the writ until he has purged himself of the contempt."

Under these authorities and the facts and circumstances of the instant case, the only conclusion that in my judgment is reasonable is that the justice of the Superior Court who entered the order that the writ be discharged did so solely on the ground that the respondent was then in custody under contempt proceedings for nonpayment of certain overdue installments of alimony. If he entered it for any other reason, it was a reversible abuse of discretion, since no other reason was shown by evidence or by the record.

In considering the soundness of this ground it should be kept in mind that the writ of body attachment, under which the respondent was in custody, had been issued because he was in contempt of court in failing to comply with the decree of September 28, 1934, ordering him to pay $50 and also to pay $2 per week on the arrears of alimony; that the decree of December 4 as of December 3, 1934, for the issuance of the writ, provided that he could purge himself of contempt by paying $100, the amount in arrears up to that time, and paying $5 for costs; that the payment of these sums would still leave the final decree in full force, covering payments of $5 per week in the future and very likely, to judge from the past, requiring the issuance of future body attachments to compel the respondent to make such payments; that when the motion to discharge the writ of *ne exeat* was filed and granted on December 6, he was entitled, by the express terms of the decree of December 4, to get out of confinement by merely complying with the condition set forth in that decree; and that he did thus get out on December 8.

The sole question before us is, then, whether under these circumstances the Superior Court could properly find that the purpose of the obligation .assumed by the sureties in signing the writ of *ne exeat* as bail for the respondent, namely, that he "will not go or attempt to go into parts beyond this State without the leave of our said Court", had been completely fulfilled, in .view of the doctrine, which I find to be well settled, that the purpose of such an obligation is to keep the respondent within the jurisdiction of the court, so that he will be amenable to all such process as may be issued by the court from time to time to enforce such orders and decrees as the court may make in the case during its pendency, *i. e.*, until there remains nothing to be done by him which the court shall have the right, by proper process, to compel him to do.

From the opinion in *Robinson* v. *Robinson,* 21 R. I. 81, (1898), and the cases ·cited with approval therein, and from the opinion in *Levine* v. *Levine,* 44 R. I. 61, (1921), and from judicial notice of the, long established practice in this State in such cases, it is clear to me that the writ was properly issued in the instant case; and that indeed justice and equity required that it be issued, in order ·to protect the petitioner and the minor child of the parties against the threatened danger that the respondent, by leaving the State so that he could not be served with such judicial process in the case as might be needed from time to time, would evade performance of the decree that commanded him to pay her five dollars weekly for an indefinite period.

To my mind it is clear from the opinion in *Griswold, Petitioner,* 13 R. I. 125, (1880), that it was then the view of this court that sureties in a *ne exeat* bond cannot surrender their principal; that they are not entitled to be discharged until their obligation has fulfilled the purpose for which it was given; and that such a bond cannot be held to have fulfilled the purpose so long as it may be necessary that further process be issued by the court against him to enforce some decree or order in the case.

In the opinion in that case the court cites the only two cases which the counsel for the surety in the instant case have called to our attention as precedents for the discharge of a *ne exeat* bond because the principal had been taken into custody under process issued in the cause after the issuance of the writ of *ne exeat,* namely, *Debazin* v. *Debazin,* 1 Dick. 95, and *Johnson* v. *Clendenin,* 5 Gill & J. 463; and it calls attention to the fact that in each of those cases the subsequent process was to compel performance of the *final* decree. Because there was no occasion to do so in *Griswold, Petitioner, supra,* this court did not call attention to the further fact, which is of vital importance in distinguishing the cited cases from the instant case, that in each of those cases *the decree was absolutely final and for a lump sum, to be paid at once by the respondent to the complainant.*

In each of those cases, when the subsequent process had been served by the arrest of the respondent under it, the court was able, *under that process,* to hold him for the complete performance at one time of a final decree, a performance of which would have ended the case, so that it could fairly be held that the writ of *ne exeat* had entirely served its purpose. But in the case now before us the subsequent process, under which the respondent was taken into custody, was only to compel a very *partial* performance of the decree, leaving the payment of future installments of alimony to be enforced by the issuance of further process from time to time; and the court had also power to modify the decree from time to time as circumstances might require. Here contempt proceedings had already been taken several times and they might, and still may, be necessary many more times before the termination of the case. In such a situation it seems to me that it cannot properly be held that the writ of *ne exeat* and the obligation assumed by the sureties thereon had fulfilled their purpose.

In my judgment there is no merit in the reasoning that if the petitioner deemed it necessary, she could have moved for another writ of *ne exeat* as a condition precedent to the release of the respondent from custody on December 8, 1934. He had not asked the court to release either of the sureties on the writ or to discharge it; and the decree entered on December 4, 1934, as of December 3, by which he had been adjudged in contempt and under which he was in custody, expressly provided, as above stated, that he could purge himself of the contempt by paying $100 for alimony and $5 for costs. Under these circumstances it would, in my judgment, have been wholly improper for the court to refuse to discharge him from custody under that decree or to have put him back into custody under a new writ of *ne exeat*, unless he procured new sureties that he would remain amenable to all further process in the case. Why should he be required to furnish new sureties, when he had previously procured satisfactory sureties for the same purpose, who had been discharged without his consent?

The proper view, applicable to the instant case, is well set out, it seems to me, in *Johnson* v. *Clendenin, supra*. In the argument of counsel for the sureties in that case we read: "And I insist that the writ of *ne exeat* must be held to have discharged all its offices, when it detains the party until other and final process may be resorted to." This, to my mind, means process compliance with which will end the case. At page 481 of the opinion the court says: "To determine this question, it is only necessary to consider, what is the object and design of the writ of *ne exeat*, as used by courts of chancery in the exercise of their equity jurisdiction. It is to hold the party amenable to justice, and to render him personally responsible for the performance of their orders and decrees."

In my opinion the purpose and object of such a writ is to compel the respondent to give security, by procuring sureties to sign the writ as his equitable bail therefor, that

he will be in the State for personal service upon him of any process which may be issued against him in the cause, *during its pendency,* whenever such process may be issued; and none of the sureties on such a writ can properly be discharged by the court before the full accomplishment of such purpose and object. That this is the proper rule is, in my judgment, clearly shown by the following authorities, in addition to those cited *supra.* I presume that the court could properly release such sureties, if the respondent furnished other equally satisfactory sureties, who assumed the same obligation; but I cannot see how it could do so otherwise, any more than it could properly discharge sureties on a bond given for the satisfaction of such judgment or the *performance* of such final decree as may be entered in a cause. These authorities are listed chronologically. *LeClea* v. *Trot,* Finch's Precedents in Chancery, 230; *Stapylton* v. *Peill,* 19 Ves. Jr. 615; *Denton* v. *Denton,* 1 Johns. Ch. 364; *Mitchell* v. *Bunch,* 2 Paige, 606; *Bushnell* v. *Bushnell,* 15 Barb. 399; *Parker* v. *Parker,* 12 N. J. Eq. 105; *Adams* v. *Whitcomb,* 46 Vt. 708; *Wauters* v. *Van Vorst,* 28 N. J. Eq. (1 Stewart) 103; *Lewis* v. *Shainwald,* 48 Fed. 492; *Griswold* v. *Hazard,* 141 U. S. 260; *Crapps* v. *Crapps,* 148 Ga. 509.

I feel strongly that in the instant case the process under which the respondent was held in custody, when the decree discharging the writ of *ne exeat* was entered, was not the *"final·process"* in the case; that the writ had not accomplished its purpose and object and was erroneously discharged; and that justice and the proper protection of the rights and interests of the petitioner and her minor child require that the appeal be sustained and the decree appealed from reversed.

*Waldman & Waldman,* for petitioner.

*Hinckley, Allen, Tillinghast & Wheeler, S. Everett Wilkins, Jr.,* for surety.